CASE 55—ACTION FOR AN INJUNCTION—APRIL 12.

# Stone and Others v. Gregory, Judge, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT.

CHANCERY DIVISION—JUDGMENT FOR DEFENDANTS AND PLAINTIFFS AP-
PEAL. AFFIRMED.

ELECTIONS—FREE   TURNPIKES—QUESTION   SUBMITTED—MISTAKE   OF
CLERK.

Held:  Where, by mistake of the clerk in the printing of ballots,
the question submitted to the voters of a county was, "Are you
in favor of issuing bonds for the purchase and maintenance of
the turnpike roads of this county free of toll to the traveling
public?" instead of the question ordered to be voted upon, which
was, "Are you in favor of free turnpike and gravel roads?" the
mistake in the form of the question submitted did not invalidate
the election, as it is not to be presumed that any person who
was in favor of the county assuming the burden of free turn-
pikes by issuing bonds was opposed to free turnpikes, and there-
fore the mistake could not have increased the affirmative vote.

LANE & HARRISON, FOR APPELLANTS.

## POINTS INVOLVED AND AUTHORITIES CITED.

1. The act to provide free turnpike and gravel roads approved March
17, 1896, prescribes every step to be taken in the acquisition by
a county of the toll-roads or turnpikes therein.  Not a step is
to be or can be taken in the acquisition by a county of the
toll-roads or turnpikes therein, but what is prescribed by this
act; it is the last expression of legislative will upon the sub-

ject, fully covers the subject embraced in its title, and neces-
sarily repeals all other prior laws on that subject.   Long ·v.
Stone, 19 Ky. Law Rep., 246; Rice v. The Commonwealth, man-
uscript opinion March 21, 1901; Gorham v. Luckett, 6 B. M.,
154; Davis v. Fairbanks, 3 How., 636; Dexter v. Allen, 16
Barb., 15; Roche v. Mayor, 40 N. J. L., 257; Industrial School
v. White, 13 N. J. E., 290; Swan v. Breck, 40 Miss., 268.

2. In virtue of the provisions of the act approved March 17, 1896,
to provide free turnpike and gravel roads, the qualified voters
of a county are alone invested with the jurisdiction to determine
whether the roads therein should be or should not be toll free.
There can not be in force at the same time, within the same
jurisdiction and territory, and governing the same subject-
matter two conflicting statutory provisions.   Com. v. Killiher,
12 Allen, 480; People v. Burt, 43 Cal., 561; Daw v. Metropoli-
tan, 12 C. B. N. S., 161; Hurson v. Carson, 26 W. V., 226.

On no known rule of construction could the power be vest-
ed by the statute in two separate and distinct agencies at 'the
same time to discharge the same duty.   The gift of the power to
one is a denial of it to the other, and the last gift always re-
vokes the first.   If the fiscal court were ever by any statute in
force prior to March 17, 1896, invested with the power to ac-
quire by lease, contract, purchase or condemnation the turn-
pikes or toll-roads in its county, such previous power was re-
voked by the act of March 17, 1896, which is a complete law
upon the subject.

3. The failure of the official charged with the duty to have printed
upon the ballots used at an election upon a submission thereof
to the qualified voters of the county, the question "Are you in fa-
vor of free turnpike and gravel roads" simply leaves each
voter at perfect liberty to write out himself in the booth .with
black lead pencil on his ballot the question, the yes and the no,
and to indicate by his cross-mark his answer thereto in the
manner provided in section 1459 of the Kentucky Statutes, and
his cross-mark opposite the word yes or no, as written out.and
made on that ballot, would be counted as a legal vote for or
against that proposition, because such ballot is expressly au-
thorized by section 1471 of the Kentucky Statutes, and the
omission to have printed that question upon the ballot in no
wise interfered with the opportunity of the voter to indicate
his choice or to cast his ballot thereon.

4. The question formulated by section 2 of the act, approved March
17, 1896, to provide free turnpike and gravel roads as well as
that formulated in section 9 of the same act, have their mean-
ing and effect determined by that act, no other meaning or

effect can be given to them either by the election officers or by the courts. These questions or propositions are distinct and separate. A vote for one is not a vote for the other, and neither is a substitute for or the equivalent of the other. People v. Woodhull, 14 Mich., 432.

5. When a ballot used at an election held under the Australian system disclosed a vote for a distinct public measure, or a certain person, as a candidate for any office, it is not permissible with any kind of evidence in opposition to what plainly appears upon the ballot that it was the intent of the voter to vote for some other measure or some other candidate. Evidence of surrounding circumstances at the time the vote is cast may aid the officer in interpreting the intent of the voter from what appears upon the ballot, but never to show that the intent was to vote for an entirely different person or an entirely different measure than what appears upon the face of the ballot itself. Anderson v. Menifee, 9 Ky. Law Rep., 184; People v. Seaman, 5 Denio, 409; People v. McMannis, 30 Barb., 620; Mather v. McNeal, 22 Ky. Law Rep., 1112; People v. Woodhull, 14 Mich., 432; Paine on Elections, sec. 247; Cooley on Constitutional Limitations, 610, sec. 602; Pepper v. Cicott, 16 Mich., 283; Toney v. Harris, 85 Ky., 453.

6. The power delegated in the act of March 17, 1896, to the fiscal court of the county of taxation to pay the purchase price of, and thereafter to keep in repair, the turnpike or toll-roads acquired under its provision, is delegated only under the conditions and limitations, and on the terms set out in the act, and these terms, conditions and limitations are a part of and are the measure of the power granted, and unless they were complied with and conformed to in the proceedings by the local authorities to carry into execution the act, the power to tax is not created. Campbell v. Taylor, 8 Bush, 206.

MORTON V. JOYES, COUNTY ATTORNEY, FOR APPELLEE. (D. W. SANDERS, WM. B. THOMAS, W. W. THUM OF COUNSEL.)

The appellant in this action, a tax payer of Jefferson county, seeks to restrain and enjoin the appellee, the fiscal court of the county, from purchasing numerous turnpikes or toll-roads already contracted for and others negotiated for, and from levying a tax to pay for the same, relying on an informality connected with the election held on November 6, 1900, on the subject of free turnpikes, namely, that the ballot contained the question "Are you in favor of issuing bonds for the purchase and maintenance of the turnpike roads of this county free of toll to the traveling public," when the question should have

been as provided in the statute, "Are you in favor of free turn-pikes and gravel roads?" &c. This mistake was the result of inadvertence on the part of the county clerk who prepared the ballot. In every other respect the pleadings show an exact compliance with the provisions of the statute, the act of March 17, 1896, art. 6, ch. 129, Kentucky Statutes, edition of 1899, there being no dispute as to the result of the vote; the certificate of the canvassers of the vote showing that more than two-thirds of those voting on the proposition as it appeared on the ballot voted in the affirmative.

In addition to the defense made by the fiscal court in the second paragraph of its answer, that the ballots as cast gave a true expression of the sense of the people on the proposition to have free turnpikes and gravel roads, another defense, which is contained in the third paragraph of defendant's answer is relied upon, namely, that the fiscal court has authority under the Constitution and the Statutes, independent of any election on the subject, to construct or purchase turnpikes or gravel roads so long as it can provide for the payment of the same by a levy of not exceeding twenty-five cents on the one hundred dollars' worth of property, and so long as its total levy for the current year for all county purposes does not exceed fifty cents, the maximum fixed by the Constitution and Statutes.

In the case at bar the levy is within the limits prescribed by the Constitution and the statute.

2. Was the election valid to authorize the purchase of the turn-pikes and the levy of tax to pay for same?

Section 1459, Kentucky Statutes, provides that when a public measure is proposed to be voted on by the people, the *substance* of such measure shall be clearly indicated on the ballot, thus indicating that regard shall be had to the *substance* of the question, and not the *form*. This election was thoroughly discussed and published by the newspapers and by printed notices in every precinct in the city and county and the voters were fully apprised that the election was to be held upon the proposition to have free turnpikes and gravel roads in the county. No order of the fiscal court or county court, nor advertisement, nor publication of such order had ever been made *as to the proposition to issue bonds*, and the voters had no reason to expect, nor to be prepared to vote upon such a proposition. The question then is, did the proposition as actually printed on the ballot give an opportunity to the voter to express his wishes as to whether or not *the turnpikes should be free?* If it did, then the result of the vote is an expression of the

sense of the people voting at the election upon the question which they had been fully informed would be submitted to them at that election.

## AUTHORITIES.

Act of March 17, 1896 (art. 6, ch. 129, Ky. Stats., ed. of 1899; Act of October 17, 1892; secs. 1834, 1839, 1840, 1882, 1886, Ky. Stats.; Act of March 10, 1894; secs. 4306, 4307; Maysville, &c., v. Wiggins, 20 Rep., 724; sec. 1840, Ky. Stats.; Combs c. Letcher County, 21 Ky. Law Rep., 1057; sec. 1459, Ky. Stats.; People v. Tisdale, 1 Douglas, 59; Cattell v. Lowry, 45 Iowa, 478; Hawes v. Miller, 56 Iowa, 395; State v. Cavers, 22 Iowa, 243; State v. Ellwood, 12 Wis., 551; Clark v. Leathers, 9 Ky. Law Rep., 558; Washburn v. Bullitt County, 110 U. S., 558; Bowers v. Smith, 111 Mo., 45; Gayle v. Owen County Court, 33 Ky., 61; Hubbard v. Commonwealth, 10 Ky. Law Rep., 683; Taylor v. Commonwealth, 22 Ky. Law Rep., 1003.

OPINION OF THE COURT BY JUDGE DuRELLE—AFFIRMING.

On August 4, 1900, a petition signed by some 9,000 voters of Jefferson county was presented to the county judge, petitioning him to direct an election to be held in that county at the next regular election to take the sense of the qualified voters upon the proposition to have free turnpike and gravel roads in that county. On September 1, 1900, at the next regular term of the court, an order was duly entered directing such election to be held. Within five days after the entry of the order a certified copy was delivered to the sheriff, who made publication as required by the act of March 17, 1896, under which the election was to be held. The second section of the act provides that in submitting the proposition to the voters the question, "Are you in favor of free turnpikes and gravel roads?" shall be printed on the ballot, so arranged that the voter can vote "Yes" or "No," by placing the stencil mark to the right of the question in a square appropriately marked. Kentucky Statutes, section 1459. The act also provides that return

Stone, et als., v. Gregory, Judge, &c.

of the vote shall be made by the election commissioners,
and a certificate thereof spread on the order book of the
county court, and that, if it appear that a majority of all
the votes cast for and against the proposition are in favor
of the proposition, then the fiscal court may acquire by
gift, lease, purchase, or contract any or all the turnpike
roads within the county on the best terms consistent with
the public interest.   By section 5 of the act it is provided
that the fiscal court may levy a tax from year to year, not
exceeding 25 cents on the $100 for the purpose of paying
for and maintaining the roads acquired under the act.   By
section 9 it is provided that the fiscal court may issue and
sell bonds, within the constitutional limitation, for the pur-
pose of acquiring and maintaining such roads; but before
issuing such bonds the fiscal court shall call an election
and direct a poll to be opened at the next county or regu-
lar election not occurring within sixty days from the date
of the order, at which election the question is to be printed
on the ballot, "Are you in favor of issuing bonds for the
purchase and maintenance of the turnpike roads of this
county free of toll to the traveling public?"   The act fur-
ther provides that, if two-thirds of the legal voters voting
on such proposition favor the proposition, then the fiscal
court may proceed to issue bonds.   There is an express
provision that the question of issuing bonds may be sub-
mitted to the voters at the same time that the question of
having free turnpike and gravel roads is submitted, or at
some other time.   The act provides for two elections—one
called by the county judge upon the petition of 15 per
cent. of the vote cast at the last preceding general election
upon the question, "Are you in favor of free turnpike and
gravel roads?" on which question a majority of the vote

is sufficient; the other called by the fiscal court upon the question, "Are you in favor of issuing bonds for the purchase and maintenance of the turnpike roads of this county free of toll to the traveling public?" upon which a two-thirds vote is required to carry the proposition. All the proceedings with relation to the order calling the election and the advertisement by the sheriff are conceded to have been regular. But by some mistake of the clerk, the question printed upon the ballot was not in the form provided by the order, but in the form authorized to be submitted by order of the fiscal court upon the proposition of issuing bonds, to-wit, "Are you in favor of issuing bonds for the purchase and maintenance of the turnpike roads of this county free of toll to the traveling public?" Of the votes cast upon this proposition more than two-thirds were in the affirmative. Appellant brought this suit as a taxpayer of Jefferson county, for himself and all others similarly situated, against the fiscal court to enjoin it from purchasing certain turnpikes, and from proceeding to levy taxes to pay the purchase price of the roads for their maintenance. The answer of the fiscal court bases upon two grounds its claim of power to levy the proposed tax: First, upon the proceedings and election had under authority of the act of March 17, 1896; and, second, under the general powers given to the fiscal court by the various acts contained in chapters 52 and 110, Kentucky Statutes. Demurrers were submitted to the second and third paragraphs of the answer, carried back to the petition, sustained, and, appellant declining to plead further, his petition was dismissed.

The wrong question was presented to the voters. The question ordered to be voted upon was "Are you in favor of free turnpike and gravel roads?" The question actually voted upon was, "Are you in favor of issuing bonds for the

purchase and maintenance of the turnpike roads of this county free of toll to the traveling public?" The first question presented is, therefore, whether the question actually submitted and voted upon, fairly construed, is a definite expression of the will of the people upon the question which should have been submitted and voted upon. If it was, then undoubtedly the will of the people ought not to be defeated by the fault of the officer; if not, the election was a nullity. On behalf of appellant it is insisted that the act of March 17, 1896, is a delegation of power under limitations which must be strictly observed, and that it is only where it is made to appear in the manner provided by the statute that a majority of all the votes cast upon the proposition to have free turnpike and gravel roads is in favor thereof that the fiscal court has any power, in any manner, to acquire the turnpike or toll roads of the county, or to levy from year to year a tax of not exceeding 25 cents on the $100 to pay off and maintain such roads. On the other hand, the fiscal court insists that the voters, in answering the question printed upon the ballot, stated not only their desire to have free turnpike and gravel roads, but also their willingness that bonds of the county should be issued to pay for and maintain them. It will be observed that after an election resulting in a vote in favor of the proposition to have free turnpikes, two courses might be pursued to pay the cost of the conversion of the toll roads into free highways—it might be provided for by a tax levy not exceeding 25 cents on the $100, or, in counties where the constitutional limitation of liability, or the current necessities of the county, render this mode impracticable, authority might be obtained by a two-thirds vote at an election held for the purpose to issue and sell bonds in order to acquire and free the toll roads. In the

recent case of Whaley v. Com. (Ky.), 61 S. W., 35, it was held that if, at an election held on the proposition to have free turnpikes and gravel roads, two-thirds of those voting were in favor of the proposition, such a vote by implication authorized the county to incur indebtedness in excess of the revenue provided for the year to purchase the turnpikes of the county, though not to issue bonds for that purpose. By section 1459, Kentucky Statutes, it is provided: "Whenever a constitutional amendment or other public measure is proposed to be voted upon by the people, the substance of such an amendment or other public measure shall be clearly indicated on the ballot. . . ." This requirement indicates that, in determining the sufficiency of such submission to the voters, substance, and not form, is to be looked to. To say nothing of the written application for the election, signed by more than 9,000 voters of the county who petitioned for an opportunity to vote upon the question of having free turnpike and gravel roads, the object of the election was shown by the newspapers publications by the sheriff and the printed notices posted in as many as four places in every voting precinct in the county. But when we turn to the question printed upon the ballot it seems fairly to indicate that those who voted "Yes" were in favor not only of having free turnpike roads, but were so to the extent of being in favor of the issuance of bonds to pay therefor. Those who voted upon the proposition may be supposed to have belonged to three classes—those who were opposed to the county assuming the burden of free turnpikes, those who were in favor of its doing so by an annual tax, and those who were in favor of its doing so by the issuance of county bonds. Clearly, it is not fair to assume that any one in either of the last two classes was opposed to free turn-

pikes.   It is argued that some of the voters may have been
willing the county should acquire the turnpikes by the is-
suance of bonds, but unwilling that it should do so by the
levy of an annual tax; but the knowledge which the court
has, and must be presumed to have, of prevailing public
opinion upon such subjects, does not lend support to this
proposition; and, while we may suppose that the addition
of a proposition to issue bonds may have deterred some of
the voters from voting at all upon the proposition, or have
led others to vote against it, we are not of opinion that it
could be fairly presumed to have increased the vote in
favor of free turnpikes.  If the substance of the public
measure was clearly indicated on the ballot, no mere mis-
take of the officer should be permitted to stand between the
voters and the execution of their will.  The question of
having free turnpike and gravel roads was requested by
the requisite number of voters.  It was ordered to be sub-
mitted to the voters of the county by the proper authority.
Due public notice was given in the proper manner, and by
the proper officer, before and at the election.  The sub-
stance of the measure was clearly indicated upon the bal-
lot, and a two-thirds majority of those voting expressed
themselves as in its favor to the extent of having the
county incur a bonded indebtedness for the purpose. There
is no question here of the issuance of bonds or of levying
an annual tax greater than that authorized for the pur-
pose.  The simple question is whether the fiscal court can
exercise the authority, the granting of which was with
every formality directed to be submitted to the vote of
the people, and was, in substance, voted for upon the bal-
lots.  In Gayle v. Owen Co. Ct., 83 Ky., 64, the act required
the voters to be asked whether they were in favor of the
sale of spirituous, vinous, or malt liquors in Owen county

as a beverage. The question asked was, "Are you in favor of the sale of spirituous, vinous, or malt liquors in this county?" Said Judge Pryor, delivering the opinion of the court: "There is no alleged fraud, or any fact showing that the voters were deceived, or in ignorance of the provisions of the act in regard to which they were voting; nor would such an irregularity have invalidated the election. The order for the election had been entered on the order book of the county by the county judge, and the same published for weeks before the election. An intelligent people must be presumed to have known what they were voting for; and beside, the questions propounded were as much prejudicial to the one side as to the other, and that a majority voted for the measure is not controverted." In Clark v. Leathers (Ky.), 5 S. W., 578, the proposition to be voted on was "whether these commissioners should be empowered to subscribe to the capital stock of turnpike roads constructed in the county." The question really asked was, "Are you for the tax or against the tax?" without specifying its object. Said Judge Pryor, delivering the opinion of the court: "Where there has been a fair and free expression of the popular will, a mere irregularity in conducting an election will not invalidate it. . . . The order of the county judge is in compliance with the statute authorizing the vote to be taken on the question of empowering the commissioners to make the subscription. The report of the judges of the election, or those supervising the vote, shows a vote 'for the tax' and a vote 'against the tax,' and this was probably the manner in which the question was submitted on the poll book; that is, one column headed 'For the tax' and the other 'Against the tax.' The question in fact was whether the voters of Kenton county, excluding the city of Covington, were for or

against a tax by which was to be raised the sum of $750
for each mile of turnpike agreed to be constructed by pri-
vate subscription.  The voters understood the proposition;
and, if submitted as is said it was by the appellants, it is
a substantial compliance with the law."  So, in Taylor v.
Com. (Ky.), 59 S. W., 482, it was held that a vote in favor
of the sale of liquor necessarily meant that the local option
law then in force should become inoperative. Said Judge
Hobson, delivering the opinion of the court:  "The order
of the county court directs the sheriff of the county to
'cause a poll to be opened at the voting places in said pre-
cinct on July 15, 1899, when the sense of the voters of said
precinct shall be taken as to whether spirituous, vinous, or
malt liquors shall be sold in said Tom's Creek precinct No.
3 of Bell county, Ky.'  If the court had further directed
the vote to be taken on the question whether or not the
prohibition law then in force should become inoperative,
it would have added nothing to the sense of the sentence
above quoted.  A vote in favor of the sale was of neces-
sity a vote in favor of the law then in force prohibiting the
sale becoming inoperative.  The substance of the statute
was clearly complied with."  See also, Cattell v. Lowry, 45
Iowa, 478; Hawes v. Miller, 56 Iowa, 395 (9 N. W., 307);
State v. Elwood, 12 Wis,. 551; Hubbard v. Com., 10 Ky.
Law Rep., 683; Bowers v. Smith, 111 Mo., 45 (20 S. W., 101),
(16 L. R. A., 754), (33 Am. St. Rep., 491); State v. Cavers, 22
Iowa, 343.  The other questions presented in argument are
not necessary to the decision of the case, and are not de-
cided.  The judgment is affirmed.  Whole court sitting.