## Armstrong v. Fiscal Court of Carter County.

(Decided February 5, 1915.)

### Appeal from Carter Circuit Court.

1.  Elections—Submission of Question to Voters—Compliance With Statutes.—In the submission of public questions to the voters, a substantial compliance with the Statute as to the manner and form of submission is sufficient; but where the submission is in such ambiguous and unintelligible form as to be confusing to the elector, or as to make it uncertain how he shall mark his ballot so as to register his intention, the election will be held invalid.

2.  Elections—Purpose of Holding Elections.—The purpose of holding elections is to ascertain the public will, and neither the courts nor the election authorities are authorized to arbitrarily assume that the voters meant something which cannot be fairly ascertained from the ballots themselves.

3   Elections—Ambiguity.—The question: "Are you for or against voting bonds on the county of Carter, State of Kentucky, for the purpose of building roads and bridges to the amount of one hun-

dred and fifty thousand ($150,000) dollars in Carter County?" is in such ambiguous form as that the electors might well have differed as to the manner of marking their ballots so as to register their several intentions; therefore the will of the voters could not well be ascertained under such a submission.

THEOBALD & THEOBALD for appellant.

THOMAS S. YATES for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

The Fiscal Court of Carter County, acting under the provisions of the Legislative Act of 1914 (page 338), at its regular term in August, 1914, after the filing of the petition required by the act, entered an order calling an election in that county for Tuesday, November 3rd, 1914, for the purpose of ascertaining the will of the legal voters of that county as to whether there should be issued by the fiscal court thereof $150,000 in bonds of the county, the proceeds thereof to be used exclusively for the building, or construction, or reconstruction of roads.

Section 21 of the act of 1914 provides "the question 'are you in favor of issuing————————in bonds for the purpose of building roads and bridges?' shall be printed on the ballot as provided in the general election law, Sec. 1459, Kentucky Statutes."

The Section 1459 referred to in that act provides: "Whenever a constitutional amendment or other public measure is proposed to be voted upon by the people the substance of such amendment or other public measure shall be clearly indicated upon the ballot, and two spaces shall be left upon the right of the same; one for votes favoring the amendment or public measure to be designated by the word 'Yes,' and one for votes opposing the amendment or measure to be designated by the word 'No.'"

The order of the fiscal court calling the election followed these statutes closely, and directed that "the following question shall be caused to be printed on the ballot to be used at said election as provided for in the general election law, Section 1459, Kentucky Statutes: 'Are you in favor of issuing One Hundred and Fifty Thousand ($150,000) Dollars in bonds for the purpose of building roads and bridges?'"

Up to this point there was not only a substantial, but a literal and strict compliance with the requirement of the statute as to the form in which the question should be submitted; but when it came to the preparation of the ballot, in some way which is not clearly explained, there was printed thereon and the question was actually submitted to the electors in the following form, to-wit:

"Are you for or against voting bonds on the County of Carter, State of Kentucky, for the purpose of building roads and bridges to the amount of ($150,000) One Hundred and Fifty Thousand Dollars, in Carter County?"

☐ YES

☐ NO

This is an agreed action between appellant, a taxpayer of Carter county, and the fiscal court, upon an agreed statement of facts to test the validity of the election and consequently the proposed bond issue.

The agreed statement of facts raises two questions; first, the sufficiency of the advertisement of the election, and, second, the sufficiency of the form in which the question was actually submitted to the electors; but appellant, in his brief, waives the first question and concedes that the advertisement was sufficient, so that the second question is the only one with which we are concerned.

The board of election commissioners of Carter county certified the result of said election as follows:

"On the question are you for or against issuing bonds to the amount of $150,000 for the purpose of building roads and bridges in Carter county, Kentucky—for 2,465, against 1,079."

From this certificate it may be presumed that the election commissioners assumed that the ballots marked "yes" were voted in favor of the bond issue, and those marked "no" voted against it.

The judgment of the lower court upheld the validity of the election, and thereby inferentially held that the form in which the question was submitted was a substantial compliance with the law, and from that judgment the taxpayer has appealed.

This court has several times decided that in the submission of public questions a substantial compliance with the requirement of the statute as to the manner and form of submission is all that is required; but it has at no time held that the submission of a question in such

an ambiguous and unintelligible form as to be confusing to the elector, or in such form as to make it uncertain how he shall mark his ballot so as to register his intention, and so as to have it counted in accordance with such intention, was sufficient. Of the 2,465 ballots marked "Yes" it cannot be said with any degree of certainty, under the form of submission in this case, that all of those electors intended to vote for the bond issue; it can be said with just as much reason that they all intended to vote against it. An affirmative vote on the submission of the question of whether one is for or against a given proposition is nothing more nor less than a vote both for and against it; and a negative vote on a question so submitted can mean nothing more nor less than the elector is neither for nor against it. In other words, an affirmative vote is both for and against the proposition, and a negative is neither for nor against it, so that in reality there is no practical difference between an affirmative and a negative vote.

Of course, the courts might arbitrarily assume that the ballots marked "Yes" were in favor of the bond issue, and that the ballots marked "No" were against it, as did the county election commissioners; but, in the absence of a fairly intelligible submission in a form reasonably free from ambiguity by which it may be determined with at least some degree of accuracy how the electors intended their ballots to be counted, it would be an unjustifiable assumption of authority by the court to say that these 3,500 voters meant by marking their ballots in a certain way something that cannot be fairly ascertained from the ballots themselves, by reason of the form in which the question was submitted.

The fact that the election commissioners certified that 2,465 votes were cast for the bond issue and 1,079 against it, under the form of the question submitted, cannot conclude the question; certainly, if the courts, under the circumstances, have no right to guess how the electors intended to vote, the election commissioners would not have. If the submission is made in such ambiguous and uncertain form as that voters may reasonably differ as to the effect of marking the ballot in a particular way, or in such form as to leave the authorities charged with the duty of counting the ballots and certifying the results in doubt as to the intentions of the voters who marked their ballots in a certain way, there can be no doubt the election is invalid.

The purpose of holding elections is to ascertain the public will, and it is too plain for argument that in such cases that will cannot be told from the ballots, and neither the courts nor the election authorities are authorized to arbitrarily assume that the voters meant something which cannot fairly be ascertained from the ballots themselves.

It is not the purpose of this court to set aside the will of the people in this or any election, but the highest considerations of public policy require that when electors are called upon to vote a bond issue to burden their own and future generations, the question should at least be submitted to them in such intelligible form as that they may know with some degree of certainty how to mark their ballots so as to express their intentions, and so that intention may be reasonably ascertained from the ballots by the authorities whose duty it is to count them.

We are constrained to hold that the form of submission in this case was so confusing and unintelligible as that the voters might well have differed as to how they must mark their ballots to properly register their intentions, and for that reason the election is void.

The judgment is reversed with directions to enter a judgment setting aside the election.

Whole court sitting.