# Arnett, Secretary of State, et al. v. Sullivan.

Sept. 29, 1939.

W. B. Ardery, Judge.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellants.

Richard Priest Dietzman, Frank A. Ropke, Charles N. Hobson and Anne McDonald for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The regular 1938 session of our General Assembly by chapter 20 of the acts for that session, duly submitted to the voters of the commonwealth for their ratification or rejection at the regular November 1939 election an amendment to our Constitution. The contemplated amendment made it the imperative duty of the General Assembly to "provide by law for assistance to the aged, to the blind, and to dependent children, and for other assistance in cooperation with the Federal Government under the Social Security Act and acts amendatory thereto," and which was done pursuant to the provisions of Section 256 of our Constitution. Its next section (257) says: "Before an amendment shall

be submitted to a vote, the secretary of state shall cause such proposed amendment, and the time that the same is to be voted upon, to be published *at least* ninety days before the vote is to be taken thereon in such manner as may be prescribed by law.'' (Our emphasis.)

At the first session after the adoption of our present Constitution the General Assembly enacted Section 1459 of our present Statutes, designed to carry into effect the two constitutional provisions embodied in its Sections 256 and 257. A part of the section of the Statutes dealing with the publication of the submitted amendment says: ''Such publication shall be made so that the last publications shall be at least ninety days preceding the election at which said amendment is to be voted on, as provided in Constitution, Sections 256 and 257.'' The regular election at which the proposed amendment should be submitted to the people was and is the regular election day in November, 1939, but the appellant, Charles D. Arnett, Secretary of State, for the Commonwealth of Kentucky, did not advertise or publish its submission until August 26, 1939, which, according to our calculation left but 73 days intervening between the publication and the election day, and being 17 days less than the constitutional requirement.

As a citizen and tax payer the appellee and plaintiff below, Michael G. Sullivan, filed this action in the Franklin circuit court against the Secretary of State, and the defendant and appellee, R. Carey Graham, as County Court Clerk of Franklin County, to enjoin the latter from printing the submission on the official ballot for the regular November election, 1939, and to enjoin and require the defendant, Arnett, to withdraw from the various county court clerks of the commonwealth his already made certification of the submission, upon the ground that he had failed to make publication thereof as the Constitution requires, and that the submission on the official ballots throughout the state would incur considerable expense and would be of no value, since the amendment, if ratified by the requisite vote, could not be put into effect for the reason stated.

Plaintiff asked that he be permitted to prosecute the action as a citizen and tax payer of Franklin County for himself for the use and benefit of all of the tax payers in the Commonwealth, and to proceed against the defendant, Graham, as county court clerk of Frank-

lin county, not only as such officer for his county, but as a representative of all of the other 119 county court clerks within the commonwealth. Those motions were sustained by the court and the action proceeded accordingly. Defendants demurred to the petition which set out the facts supra, and the court overruled it. They declined to plead further and judgment was entered granting the perpetual injunctions prayed for in the petition against the respective defendants, and from that judgment they prosecute this appeal.

The only argument made in brief of counsel for appellants for a reversal of the judgment is, that the language in Section 257 requiring the publication of the submission to be "at least ninety days before the vote is to be taken thereon" and the corresponding language in Section 1459, is directory and not mandatory. In support of that argument numerous cases from this and some from other courts are cited dealing with the rule applicable to the interpretation of *statutes* which counsel seek to apply to *constitutional* provisions; but which all courts, so far as we are aware, have uniformly declined to adopt—all of them declaring that the rule permitting courts to adopt directory or mandatory interpretations with reference to statutes is much more restricted, or altogether lacking than when applied to constitutional provisions, as will be seen from this language taken from the text of volume 11 in the very recent work of American Jurisprudence, on page 686, Section 59: "The analogous rules distinguishing mandatory and directory statutes are of little value in this connection and are rarely applied in passing upon the provisions of a Constitution." That excerpt is but a reiteration of the substance of the rule as stated by all authoritative texts writers and courts, including Mr. Cooley in Volume I, of the 8th Edition of his celebrated treatise on Constitutional Limitations. On page 160 of the volume referred to the text says: "There are some cases, however, where the doctrine of directory statutes has been applied to constitutional provisions, but they are so plainly at variance with the weight of authority upon the precise points considered that we feel warranted in saying that the judicial decisions as they now stand do not sanction the application." The learned author continues through following pages to fortify that statement by citing opinions of various courts, including that of some of the few ones adopting departures in

some instances from the general rule—that all constitutional provisions are mandatory and none of them directory. Illustrating the holding of the latter class of constitutional interpretations the author cites cases wherein the involved constitutional provision required that an act pending before the legislature should be read "distinctly" the required number of times before it could be voted on by the legislative body, and the courts held that the word "distinctly" was more of a directory command than mandatory, since it necessarily was "addressed to the judgment of the legislative body, whose decision as to what reading is sufficiently distinct to be a compliance cannot be subject to review."

An enumeration (even without excerpts) of text authorities and judicial opinions of various courts of last resort in this country, approving the mandatory character of constitutional provisions would extend this opinion far beyond due limits, to avoid which we will not undertake the task but will content ourselves by saying that with few exceptions, and only where the provision under consideration was of such a nature as to scarcely present the question, the rule is declared that constitutional provisions are *mandatory* and never directory. This court is in complete accord therewith. Some of the domestic cases so aligning this court are Varney v. Justice, 86 Ky. 596, 600, 6 S. W. 457, 9 Ky. Law Rep. 743; Miller v. Johnson, 92 Ky. 589, 18 S. W. 522, 13 Ky. Law Rep. 933, 15 L. R. A. 524; Zimmerman v. Brooks, 118 Ky. 85, 80 S. W. 443, 25 Ky. Law Rep. 2284; Scott v. McCreary, 148 Ky. 791, 147 S. W. 903; McCreary, Governor, v. Speer, 156 Ky. 783, 162 S. W. 99; Bosworth, Auditor, v. State University, 166 Ky. 436, 179 S. W. 403, L. R. A. 1917B, 808, and Jefferson County, ex rel Grauman, v. Jefferson County Fiscal Court, 273 Ky. 674, 117 S. W. (2d) 918. There are others of the same tenor following the last cited one, as well as many others preceding it. In fact, we have been cited to no domestic case, nor have we been able to find one, of contrary holding. All of the cases except the Speer case involved other constitutional requirements and limitations than the submission of constitutional amendments to a vote of the people for ratification or rejection, but in that case the identical question here involved was the only one submitted to and determined by the court. There the Secretary of State had failed to publish by way of advertisement the submission of the constitutional

amendment involved as much as 90 days preceding the general election day. A citizen and tax payer—just as was done by Mr. Sullivan in this case—brought a suit in the same court to enjoin the Secretary of State from certifying the amendment to the various county court clerks of the commonwealth. The trial court sustained the prayer of the petition and granted the injunction prayed for therein. The defendants therein appealed from that judgment to this court and it was affirmed.

We in that case, as expressing our adopted rule, approved this excerpt from the Varney opinion supra [86 Ky. 596, 6 S. W. 459]: "By the term 'directory' it is meant that the statute gives directions which ought to be followed; but the power given is not so limited by the directions that it cannot be exercised without following the directions given. In other words, if the directions given by the statute to accomplish a given end are violated, but the given end is in fact accomplished, without affecting the real merits of the case, then the statute is to be regarded as directory merely. Should this rule of construction be applied to the Constitution of the state? We think not. The Constitution of the state was adopted by the people of the state as the fundamental law of the state. The fundamental law was designed by the people adopting it to be restrictive upon the powers of the several departments of government created by it. It was intended by the people that all departments of the state government should shape their conduct by this fundamental law. Its every section was, doubtless, regarded by the people adopting it as of vital importance, and worthy to become a part and parcel of a constitutional form of government, by which the governors as well as the governed were to be governed. Its every mandate was intended to be paramount authority to all persons holding official trusts, in whatever department of government, and to the sovereign people themselves. No mere unessential matters were intended to be ingrafted in it; but each section and each article was solemnly weighed and considered, and found to be essential to the form of constitutional government adopted. Wherever the language used is prohibitory it was intended to be a positive and unequivocal negation." That same rule was expressly approved in the Bosworth opinion and all of which is in complete accord with the universally established rule for the interpretation of constitutional provisions.

To sustain the contention of counsel for appellants would not only require us to expressly overrule our former emphatically established position, but would also require us to depart from what we conceive to be the only logical one that should be approved by us, even in the absence of any precedent whatever, and though the question was one of first impression, either in this jurisdiction or in others. Appellants' counsel in their brief admit that the Speers case presented "a duplicate situation" to the instant one. They also admit that this court in that opinion went "extendedly and elaborately" into the question, and that "unless this court is persuaded to overrule the Speers case, supra, the judgment of the lower court must be affirmed." So that, there is no effort to differentiate the Speers case from the instant one. However, in order to induce us to recant from our holding in that case counsel has this to say: "At the time Section 257 was adopted perhaps the ninety day provision of the Constitution was essential and necessary due to the sparsely settled rural communities of the State, the difficulty of communication and the infrequency of publication of newspapers and the slowness of their delivery. However, under conditions existing at present, communication between the people is swift and easy, newspapers reach rural districts on the day they are published and they are published daily, while at the time the Constitution was adopted containing the provisions supra, communication was difficult and tedious, newspapers were usually published weekly and in many cases did not reach the rural communities for many days after their publication. People had no opportunity to discuss the merits of a Constitutional amendment such as they now have. Telephone as a means of communication was not widely used. Roads were in very bad condition; automobiles were not in practical use; travel from one point to another was limited; radios were unheard of; and it can readily be seen that publication of the amendments was at that time about the only means of informing the voters of the proposed amendments to the Constitution. Today conditions are entirely different and a publication of a few days prior to an election would give to the people as much opportunity to discuss the amendment and inform themselves as to its merits as would have been given by the provision requiring publication ninety days prior to the election at the time the Constitution was adopted." The

argument is unconvincing, either from a logical or precedent standpoint.

It is then insisted that the 73 days publication made in this case by the Secretary of State was and is a "substantial" compliance with the mandatory requirement of Section 257 of the Constitution, and Section 1459 of our Statutes, although both of them employ the emphatic language that the publication should be made "at least ninety days before the vote is to be taken," &c. Even if opinions dealing with the interpretation of *statutes* only were available in support of that position they would not apply, as we have seen, to the instant case wherein a constitutional instead of a statutory requirement is involved.

We stated above that to follow the argument of counsel for appellants and to hold that the language of the Constitution here involved was only directory would conflict with the only logical conclusion that could be reached by the courts, even in the absence of the teachings of text writers, and the almost universal determinations of courts. It requires but little comment to sustain that statement. Written constitutions in governments adopting them, charter the course to be followed by all agencies and departments operating under them, as well as the people composing the government. Human nature is such that many individuals, whether in or out of office, would, if unrestrained, through selfish, ambitious or other motives, pursue a course destructive to orderly government wherein justice as near as humanly possible should prevail. The purpose of constitutional restraint is to guarantee as far as possible that such action on the part of those so inclined should be prevented, and that the highway to be traveled under such forms of government is that mapped out by its constitution. To hold that its provisions are directory and not mandatory would enable the class of individuals (public or private) to whittle away such necessary constitutional restraints and barriers bit by bit until the Constitution itself would be reduced to a state of disintegration and final annihilation, and the government would then be reduced to the condition of a ship without a rudder. There should be no such undermining. If a particular constitution contains provisions not adaptable to changed present conditions there is always found in it means and methods by which it may be amended, and no court should approve any other method of amendment

than the one or ones so prescribed. However, there is a vast difference between "substantial" compliance and no compliance at all. If the attempt at compliance in this case had been made as much as ninety days before the election at which the submitted amendment was to be approved or rejected by a vote of the people—but not in the exact method pointed out by either the constitutional or statutory sections supra—we would then be called upon to determine whether or not a substantial compliance had been made. But in this case the effort at compliance (substantial or literal) was never taken by the Secretary of State within the minimum period, and therefore, there has been no "substantial compliance" with its provisions in the respect here involved. It follows, therefore, that the argument of substantial compliance has no relevancy upon the legal issue, even if applicable in the determination of constitutional questions.

Further elaboration of the question would serve no purpose other than to more convincingly confirm the correctness of the universal rule referred to, and which is, that constitutions should never be amended or disregarded either by public officials (including courts) or private individuals, except in the manner pointed out in the constitution itself, since its provisions are always mandatory and never directory.

Wherefore, for the reasons stated, the judgment is affirmed.

The whole Court sitting.