S. Rayburn WATKINS, Appellant,

v.

STATE PROPERTY AND BUILDINGS
COMMISSION OF KENTUCKY et al.,
Appellees.

Dr. Richard GRISE et al., Appellants,

v.

Hon. Bert COMBS, Governor, et al.,
Appellees.

Court of Appeals of Kentucky.

Aug. 18, 1960.

As Modified on Denial of Rehearing
Feb. 1, 1961.

**512**

———◆———

Caldwell & Robinson, Bunyan S. Wilson, Jr., Ashland, for appellant, S. Rayburn Watkins.

Paul R. Huddleston, Bowling Green, for appellants, Dr. Richard Grise and others.

John B. Breckinridge, Atty. Gen., Grafton & Fleischer, Cornelius W. Grafton, Louisville, for appellees State Property & Bldgs. Commission of Ky., and others.

John B. Breckinridge, Atty. Gen., Troy D. Savage, Asst. Atty. Gen., for appellees, Hon. Bert Combs, Governor, and others.

MILLIKEN, Judge.

Pursuant to the expressed will of a majority of the electorate at the general election on November 3, 1959, approving the desirability of paying a Veterans' Bonus in Kentucky, which question was duly submitted to the people for their consideration by the 1958 General Assembly (Chapter 48, Acts of 1958), and pursuant to our interpretation of the legal effect to be given the submission of that question and the favorable vote of the people as construed in Stovall et al. v. Gartrell, Ky.1960, 332 S.W.2d 256, 259, the 1960 General Assembly enacted HB No. 85 (Ch. 15, Acts of 1960, KRS 40.010 et seq.) to provide the means and manner "for payment of a cash bonus to qualified veterans, or to certain persons deriving from them, as quickly and as free from administrative delay and expense as may be consistent with provident stewardship of public monies of the Commonwealth." The present appeals are from judgments sustaining the validity of that legislation and are consolidated by this Court for convenience of consideration and decision.

■ All of the substantial questions concerning the power of the General Assembly to direct the payment of a Veterans' Bonus and to provide for the issuance of bonds therefor which are raised in these appeals were passed upon in Stovall v. Gartrell, above, such as the legality of the procedure followed by the 1958 General Assembly in submitting the question, and the adequacy of the wording of the question on the ballot for the purpose of authorizing the issuance of bonds for the payment of the bonus in an amount exceeding the $500,000 constitutional limitation of indebtedness. Constitution, Sections 49 and 50. In that decision we said, "It is our view that the better reasoned cases from other jurisdictions are those which recognize the right of a legislature to enact reasonable veterans bonus legislation as a proper public purpose * * *. We conclude that in principle veterans bonus legislation does not violate the Federal Constitution or the Kentucky Constitution." Without further comment we reaffirm the views reached, after most serious consideration, in Stovall v. Gartrell, above, and confine this opinion to a consideration of the 1960 legislative enactment, (HB No. 85, Ch. 15, Acts of 1960, KRS 40.010 et seq.), to determine whether it represents "reasonable veterans bonus legislation."

■ This State has not authorized heretofore the payment of a bonus for past military service to veterans of the "Spanish American War, World War I, World War II or the Korean Conflict." We mention

this because it is a factor which, to some extent at least, justified the General Assembly in reaching back in point of time to include the veterans of earlier wars. Another even more persuasive factor was the inclusion of veterans of all those wars in the question placed upon the ballot at the general election of November 3, 1959. We conclude this phase of the legislation is reasonable in the circumstances.

We pass over without discussion the differential in monthly allotments payable for service within the country and service outside the country, and the difference between the $300 and $500 maximum amounts payable in the two categories because they are obviously fair and reasonable. On the other hand, the definition of "qualified veteran," the person to whom or to whose beneficiary a bonus shall be paid under Section 3(e) of the Act, appears to be the primary issue before us for decision. Section 3(e) declares:

"(e) 'qualified veteran' means a person answering to the specifications set forth in subsections (b) and (c), and who

(1) was a resident of the Commonwealth at the time of entry into active service in the armed forces and for at least six (6) months prior thereto, and

(2) if living, was a resident of the Commonwealth on November 3, 1959; or if deceased at that time, was survived by a beneficiary who was a resident of the Commonwealth on November 3, 1959, and

Provided further, that if the legal spouse of a qualified veteran was a legal resident of Kentucky on November 3, 1959, or if the qualified veteran was unmarried, his surviving mother or father were legal residents of Kentucky on November 3, 1959, such shall constitute a rebuttal presumption that the veteran lived in Kentucky on that date; and

(3) who has not received a bonus or like compensation from another state; and

(4) who is not subject to the forfeiture provisions of this Act."

Thus, in order to qualify for the benefits under the Act a veteran must (1) have been a resident of the Commonwealth for at least six months before he entered the armed service, and must (2) have been a resident on November 3, 1959, the date the public approved the payment of a Veterans' bonus and authorized the issuance of bonds therefor. Since the payment of a Veterans' bonus is to rehabilitate, in a broad sense, present citizens of Kentucky, we think the General Assembly did not act unreasonably in generally classifying or confining qualified veterans to those who were residents of the State at the time the electorate approved the payment of a bonus. Substantially all legislation involves classification of some sort, and the classification here is reasonably relevant to the purposes of the Act. Payment of public funds to citizens occupying a special status by virtue of prior military service during time of hostilities effects a reasonable public purpose. Stovall v. Gartrell, supra. Whether any other general classification or recipients is a reasonable classification is not before us; we confine ourselves by necessity to the classification presented by the current legislation which undoubtedly will result in some inequities as such broad legislative classifications usually do.

■ However, the general classification which we have approved must be followed. As a consequence Sec. 3(G) of the Act which attempts to provide for payment of benefits to nonresident Veterans "who reside in an incorporated town part of which lies in Kentucky * * *" is invalid to that extent, because residency is the essential element for qualification of a veteran under the present legislation.

■ There are other miscellaneous objections to the Act, such as the objection to

Section 12(e) to the effect that there had been denied or by the Administrator of the Act itself. This shall be no recourse to the Courts by a claimant whose application provision apparently is intended to facilitate administration of the Act "as free from delay and expense as may be consistent with provident stewardship of public monies of the Commonwealth." Sec. 1 of the Act. A legislative safeguard against error or abuse on the part of the Administrator is provided by review of claims before a Board of Review of three members (Section 15). Suffice it to say that the Courts are always available for relief from the *arbitrary* exercise of power. Sec. 2 of the Constitution of Kentucky.

■ The provision of Section 16 of the Act exempting the bonus payments from "all taxation by the Commonwealth, its political subdivisions and taxing districts" was undoubtedly intended by the General Assembly to exempt from state income taxes and kindred municipal taxes which is not in violation of Section 170 of the Constitution governing exemption of property from ad valorem taxation with which, we must assume, the General Assembly was familiar.

■ Section 22 of the Act provides for the sale of "general obligation bonds of the Commonwealth, for payment of which * * the full faith, credit, resources and unlimited taxing power of the Commonwealth shall irrevocably be pledged, together with, additionally, a specific pledge of the first charge upon the proceeds of the retail sales tax required to be levied by the provisions of Chapter 48, Acts of 1958, referred to in Section 1 of this Act."

The question submitted to the people and approved by them in the November 3, 1959, election was:

"Are you in favor of the issuance and sale of bonds to pay a bonus to veterans of the Spanish American War, World War I, World War II and the Korean Conflict, which bonds shall be paid from the proceeds of a tax levied upon retail sales?"

Section 50 of the Constitution provides that "No act of the General Assembly shall authorize any debt to be contracted on behalf of the Commonwealth except for the purposes mentioned in Section 49, unless provision be made therein to levy and collect an annual tax sufficient to pay the interest stipulated, and to discharge the debt within 30 years; . nor shall such act take effect until it shall have been submitted to the people at a general election, and shall have received a majority of the votes cast for and against it * * *." The people having spoken, the General Assembly having acted pursuant thereto and in conformity to Section 50 of the Constitution by making provision "to levy and collect an annual tax sufficient to pay * * *" the bonds, we conclude that Section 22 of the present Act properly authorized a debt payable from a general retail sales tax which the full faith and honor of the Commonwealth is pledged to keep in effect in sufficient rates or amounts, and for a sufficient length of time, to pay the principal and interest on the bonds when due, and which retail sales tax revenue shall be subject to a first and paramount lien to the extent required for that purpose.

■ Since all bonds issued "shall be dated July 1, 1960" (Sec. 23 of the Act) regardless of when actually authorized, issued or sold, we concur in the judgment to the effect that "all such bonds will be of equal rank and dignity, without regard to their time or times of issuance."

The judgments are affirmed subject to the modifications herein stated and are reversed as to them.

PALMORE, Judge (concurring).

It is a basic constitutional principle that the taxpayers of a state or any other political subdivision cannot be required to bear the burden of an expenditure for the benefit of a single class or segment of society un-

less it serves a public purpose sufficiently tangible to be discernible to the courts. This concept is a logical corollary of the democratic philosophy that government exists only for the benefit of the people as a whole.

The "public purpose" served by a veteran's bonus must be identified before it can be determined whether the classification of those to be benefited at the expense of the general public is reasonable or is arbitrary and, perforce, illegally discriminatory. On this question there is a difference in fundamental approach among the members of the court, and the object of this opinion is to explain that difference and record the viewpoint of at least three of the members concurring in the majority opinion.

The dissenting opinion of the minority proceeds on the theory that the bonus is in satisfaction of a moral obligation for services rendered to the Commonwealth by all veterans who were citizens of the state at the times of their entry into military service and is authorized by Sec. 3 of the Constitution of Kentucky. This may indeed represent the popular conception of why the bonus is to be paid. But Judges MILLIKEN, WILLIAMS and I do not accept that viewpoint as a legally sufficient basis for the expenditure of public funds. Those who answered their country's call were not summoned by any state, and they served no provincial purpose. They served their country, the United States of America. The sacrifice made by each member of the military services inured alike to the benefit of every state and every citizen of the union. Sergeant York served Kentucky as surely as he served his own state of Tennessee, and if the bonus were payable strictly for services rendered he and every other veteran of the nation's military forces in time of war would be equally entitled to it. But a state may not constitutionally make such payment for federal military service. See Ferguson v. Landram, 1 Bush. 548, 64 Ky. 548; 5 Bush. 230, 68 Ky. 230; People v. Westchester County National Bank, 231 N.Y. 465, 132 N.E. 241, 15 A.L.R. 1344.

There is a second and more practical reason why the theory of service to the state cannot be accepted as the proper basis for the bonus, for if it were sustained on that ground there would be no logical constitutional protection against any other special payments or supplementary emoluments the legislature might choose to make for past services or past benefits directly or indirectly conferred upon the public.

Frankly, whatever may be the theory on which it is said that the payment of a bonus by the state effects a truly public purpose, it is extremely thin. We all recognize that. If there be any with a real right to complain, it is those citizens and taxpayers who for reasons beyond their control did not have the privilege of taking up military arms for their country, but who may have sacrificed just as much in other ways, who will receive no bonus but will be forced to pay it.

The basis, threadbare as it is, on which we sustain the bonus is that the veterans residing in Kentucky are a segment of our population who can be classified or singled out for the payment of a benefit out of public funds as an adjustment for a presumed economic disadvantage or set-back suffered by each of them from a common cause. Stovall v. Gartrell, misconstrued in the dissenting opinion, was carefully worded to convey this thought. The "moral obligation" of the state is to ameliorate the changed *status* wrought upon its citizens by their military service, not to pay for the service. An analogy might be drawn to the purpose presumed to be achieved through the various types of public assistance wherein residence is one of the conditions of eligibility. See also the strict residence requirement (KRS 206.020) of the Confederate veterans pension law. So we postulate that his military service has had an economically crippling effect on each veteran, the disadvantage of which, though it may not be visible, presumptively continues extant, representing an inequity among our citizens that the legislature has a right to recognize and broadly adjust. Precise ad-

justment on an individual basis would, of course, be impossible.

It is our conception that the state not only has the right to confine its treatment of the problem to its own people, but would exceed the bounds of a valid public purpose to extend it beyond.

We recognize that the foregoing rationale leaves the present bonus law open to the argument that it discriminates arbitrarily against veterans who are and were on November 3, 1959, citizens and taxpayers of Kentucky but did not happen to reside here when they entered the service. However, had those of us inclined to that viewpoint joined with those who regard the act as discriminatory on the theory stated in the dissenting opinion the result would have been chaos, in that the act would have been declared invalid without a majority concurrence as to why. What fate may attend a suit properly raising the question in the federal courts under the equal protection clause of the 14th Amendment of the federal Constitution remains to be seen.

The questions considered in this litigation are of bristling public interest, making it difficult for the court to arrive at a conclusion free of emotion. But law must reflect the calm voice of reason. No law suits everyone. No law that has the effect of taking money from some of the people and giving it to others would satisfy every conception of what is "fair." There are, in fact, even among veterans whom the act entitles to the bonus, those who feel honored that they were able to bear arms for their country, and would not have it any other way, who find in the freedoms guaranteed them by that country ample "requital" for whatever they may have done in her defense, and who feel it unfair that a bonus be paid at all. But the people have spoken on that question at a free election in a manner that leaves no doubt that, had it been necessary, a constitutional amendment to effect their purpose would have been adopted.

Under fundamental constitutional principles it is the duty of the courts to sustain whatever classifications may be imposed by the legislature in implementing the stated choice of the electorate, so long as they have some reasonable basis. The alternative would be to strike the law down entirely. For the reasons stated in the majority opinion, and here amplified, we find no legal substance in the theory that there is an unconstitutional discrimination against nonresidents of the state. In fact, it may be something of an understatement to say that from a strictly constitutional standpoint there is considerably more of a tangible basis for the classification than there is for the bonus itself.

WILLIAMS, J., concurs in this opinion.

MONTGOMERY, Judge.

I respectfully dissent from the majority opinion in so far as it indicates that former residents of Kentucky who were not residing in Kentucky on November 3, 1959, are to be denied payment of the veterans' bonus. The principle upon which the payment of a veterans' bonus may be paid was set forth in Stovall v. Gartrell, Ky., 332 S.W.2d 256, 259. The principle stated is: " * * * the legislature may in its wisdom properly determine that past military service has changed the status of the veteran to such a disadvantage that it is within the scope of a proper public purpose to recognize a moral obligation of the state by granting to the veteran, not a donation, but what Mr. Justice Cardozo has adequately described as 'requital.' " The Gartrell case makes "past military service" the basis for the payment of a bonus as a proper public purpose and nowhere in that case is there any suggestion that there should be any discrimination among the citizens of Kentucky who have performed the "past military service."

The members of almost every family in Kentucky have been affected by past military service. Examples of discrimination between resident and nonresident veterans in the same family are commonplace. Typical is a family of whom I have personal knowledge in which there were four sons who entered the military service during World War II. All were residents of Kentucky at that time, residing on the same ridge farm. Fortunately, all four veterans

returned from the military service, but, unfortunately, for economic reasons two of them were forced to go out of this state in order to make a living. Two of those brothers will be paid the bonus. The two less fortunate brothers will be denied the bonus because they were nonresidents of Kentucky on November 3, 1959. There is no difference in the military service performed by the four brothers. It is well to bear in mind that the bonus is a recognition of a service performed, and as the majority opinion says, a belated effort to rehabilitate. The basis of residency on a date after the service has been performed is an unreasonable classification of those who performed the same service and thus is an unfair and arbitrary discrimination. The effect of the November 3, 1959 disqualification will be to work a forfeiture against any former resident of Kentucky whose military service otherwise would be recognized by the payment of a bonus.

Accordingly, in so far as the majority opinion may be construed as a discrimination against nonresident Kentucky veterans and a denial of their right to a bonus, I disagree with it.

BIRD, C. J., and MOREMEN, J., concur in this dissent.