Thelma L. STOVALL et al., as the State Board of Election Commissioners, et al., Appellants,

v.

Charles H. GARTRELL, Appellee.

Court of Appeals of Kentucky.

Jan. 19, 1960.

As Modified on Denial of Rehearing Feb. 19, 1960.

Jo M. Ferguson, Atty. Gen., H. D. Reed, Jr., Asst. Atty. Gen., J. D. Buckman, Jr., Frankfort, for appellants.

Robert T. Caldwell, Ashland, for appellee.

Paul R. Huddleston, Bowling Green, amicus curiae.

CLAY, Commissioner.

This is a proceeding by a taxpayer for a declaration of rights and injunctive relief. The suit attacks the validity of a proposed constitutional amendment which provides a method of financing a veterans' bonus. The purported amendment was approved by a majority vote in the last November election.

The Chancellor adjudged that the veteran members of the General Assembly had a personal interest in the subject matter forbidden by section 57 of the Constitution; by reason thereof the Act submitting the proposal was not validly passed; and no proper constitutional amendment was submitted to the people.

On appeal, and by amicus curiae brief, a number of questions have been raised. We believe the controversy may be determined on a theory not presented by any of the parties, but one which is necessarily raised by this suit and this record.

I

Jurisdiction To Examine Question

The appellant public officials first contend that a court may not inquire into the manner in which a proposed amendment was passed in the legislature, since it was done within the constitutional framework and the people have finally voted on the question. It is suggested that this suit is some sort of nonpermissible collateral attack upon a judgment of the legislature and the people, and there is cited in support of such contention Armstrong v. King, 281 Pa. 207, 126 A. 263, and other cases. The argument is not persuasive.

The Act proposed a constitutional amendment. It could be adopted as such only if the constitutional requirements with respect to adoption were strictly followed (which includes the statutory procedures authorized by and implementing the Constitution). As the Chancellor observed, neither the legislature nor the people, or both, can short-circuit the Constitution. When the question is raised in the proper manner and at the proper time, as here, the validity of a proposed change in the Constitution is a judicial question. We think it unnecessary to do more than cite the following authorities: 11 Am.Jur., Constitutional Law, sect. 33 (page 639); 16 C.J.S. Constitutional Law § 7, p. 32; Miller v. Johnson, 92 Ky. 589, 18 S.W. 522, 15 L.R.A. 524; McCreary v. Speer, 156 Ky. 783, 162 S.W. 99.

■ Even more significantly, it is certainly a judicial matter to determine whether or not a proposed constitutional amendment is in fact and in law such a measure. As we shall demonstrate hereafter, this proposal is not a valid constitutional amendment.

## II

### Violation Of Federal Or State Constitutions

By amicus curiae brief Hon. Paul R. Huddleston has presented the proposition that neither the legislature nor the people may authorize a veterans' bonus because it is violative of the United States Constitution. It is claimed that Article 1, Section 8, of that instrument delegates to the Federal Congress exclusive power "to raise and support Armies" and a state veterans' bonus is an unlawful invasion of that field. The question has not been decided by the United States Supreme Court.

Amicus curiae relies upon Ferguson v. Landram, 64 Ky. 548 (see also same case, 68 Ky. 230). There it was held that the state could not levy taxes to reimburse counties for sums expended to induce Kentucky citizens to enter the services of the federal government during the Civil War. It would seem clear that the state may not invade the field of *raising and supporting armies* for the federal government. As mentioned in that opinion, the state cannot tax its people for this "same national purpose".

■ This principle obviously has no application here. The wars are over, and the armies participating therein were raised and supported by the federal government. The status of the veteran is not that of a soldier in the United States Army, but a Kentucky citizen the legislature and the people deem it proper to recognize because of his past service. This grant of compensation constitutes a recognition of a moral obligation to reimburse Kentuckians for losses suffered by reason of military service. It has nothing whatever to do with raising and supporting armies.

Amicus curiae also cites People v. Westchester County National Bank, 231 N.Y. 465, 132 N.E. 241, 15 A.L.R. 1344. As we read that case the New York court did not determine that the attempt of the state to give a soldiers' bonus was an invasion of federal power, but decided that the state had no legal obligation to a veteran.

We do not understand that amicus curiae is raising the question of whether or not the granting of a veterans' bonus by the legislature or the people is a legitimate public purpose. Since the problem is presented, however, by his reliance upon the Westchester Bank case, just cited, and since it is important to our determination of the true nature of the proposal submitted to the people (to be hereafter discussed) we will pass upon it.

■ The problem was apparently settled by the decision of this Court in Bosworth v. Harp, 154 Ky. 559, 157 S.W. 1084, 45 L.R.A.,N.S., 692. Though that case was rather extreme and involved patriotic considerations growing out of the Civil War, we think the broad principle there recognized is applicable here. That is, the legislature may in its wisdom properly determine that past military service has changed the status of the veteran to such a disadvantage that it is within the scope of a proper public purpose to recognize a moral obligation of the state by granting to the veteran, not a donation, but what Mr. Justice Cardozo has adequately described as "requital". This expression was used by Judge Cardozo in his dissenting opinion in the Westchester Bank case, we have above discussed, and we are inclined to follow his dissent rather than the majority opinion in that case.

There is a conflict of authority on this question, and the cases pro and con may be found in 7 A.L.R. 1636 and 15 A.L.R. 1359. It is our view that the better reasoned cases from other jurisdictions are those which recognize the right of a legislature to enact

reasonable veterans' bonus legislation as a proper public purpose. In particular see Grout v. Kendall, 195 Iowa 467, 192 N.W. 529; State Ex rel. Griffin v. Davis, 113 Kan. 4, 213 P. 171; State Ex rel. Hart v. Clausen, 113 Wash. 570, 194 P. 793, 13 A.L.R. 580; and State v. Snyder, 29 Wyo. 199, 212 P. 771.

We conclude that in principle veterans' bonus legislation does not violate the Federal Constitution or the Kentucky Constitution.

## III

### Right Of Veteran Members Of The Legislature To Vote

The Chancellor took the view that the vote of any member of the General Assembly on this purported constitutional amendment was void because within the inhibitions of section 57 of our Constitution. That section provides:

"A member who has a personal or private interest in any measure or bill proposed or pending before the General Assembly, shall disclose the fact to the House of which he is a member, and shall not vote thereon upon pain of expulsion."

We will pass over, without deciding, two objections to the Chancellor's ruling on this question. They are: (1) the court may not go behind the enrolled bill to investigate the vote, and (2) section 57 contains the only possible penalty for violation of its provisions, and the court is not authorized to declare such votes void. Assuming we may properly determine the validity of these votes, it is clear to us that the veteran members of the legislature had no "personal or private interest" in this legislation.

In Webster's New International Dictionary, the terms "personal" and "private" are defined as particularly relating to individuals as opposed to that which is "public or general".

The proposal presented to the legislature involved a broad classification of a substantial segment of the public. Though veterans in the legislature might anticipate that someday they would benefit from this legislation, such benefits were not private or personal, but were benefits to be received as members of a class.

In the sense that veterans voting on this bill might eventually realize a pecuniary benefit (or a detriment) a great mass of legislation involves the same aspect, and the qualifications of the legislators to vote thereon has never been questioned. For example, all tax legislation must necessarily affect the interest of each and every legislator. This would be particularly true with respect to exemptions when particular legislators might by reason of their tax position be substantially benefited. The same is true with respect to insurance legislation. As to those members who are lawyers, the same would be true concerning legislation involving the practice of law. Under almost any act of the legislature, each member of the General Assembly would stand to benefit or suffer a detriment depending upon whether or not he fell within the class of those persons affected. The wheels of government would stop if legislators could not vote on matters in which they necessarily have a remote personal interest by reason of being a member of the public.

The parties do not cite, nor have we been able to find in our own research, any significant decided cases upon this question. We believe, however, that section 57 must be construed as restricting the right to vote only to those members who have a peculiar special interest in legislation which will affect them in a manner differently from the public or a proper classification of members of the public.

If this general principle is at all questionable, it is certain that the veteran members of the legislature had no personal or private interest in the particular legislation under consideration, for the reason that it did not grant a veterans' bonus to anybody. This Act was intended as an enabling amendment to the Constitution, and

as we will hereafter point out, was in fact and in law nothing more than enabling legislation. It sought a vote of the people on the propriety of incurring an indebtedness to pay a veterans' bonus, but no personal or private rights were acquired by anyone thereunder.

We are therefore of the opinion that the Chancellor erroneously declared this legislation null and void on the ground that the votes of veterans were invalid.

## IV

### The Act

The constitutional proposal was in form and substance a legislative enactment (SB 296, Chapter 48). We quote the title:

"*An Act* proposing an amendment to the Constitution of Kentucky relating to the *issuance and sale of state bonds* to provide *for the payment of a bonus to veterans*. (Our emphasis)

The substance of the Act was as follows:

Section 1 provided that the Kentucky Constitution was proposed to be amended by the ratification of a new section; that the General Assembly shall by law provide for the issuance and sale of bonds "notwithstanding the limitation of indebtedness in section 49 (of the Constitution)"; that proceeds "shall be used and appropriated solely for the purpose of paying a cash bonus" not to exceed $300 for service in the continental United States and $500 for service outside thereof; and that the bonus was to be paid to "veterans, their widows or heirs, or next of kin" of the Spanish American and subsequent wars who were residents of the Commonwealth.

Section 1 further provided that the General Assembly "shall levy a tax upon all retail sales" at a rate sufficient to retire the bonds "in not less than 30 years", with provision for permissible exemption of certain sales.

Section 2 of the Act provided:

"In any election the form of the proposal shall be 'Are you in favor of the issuance and sale of bonds to pay a bonus to veterans of the Spanish-American War, World War I, World War II, and the Korean Conflict, which bonds shall be paid from the proceeds of a tax levied upon retail sales?' "

Section 3 provided the amendment shall be submitted to the voters under KRS 118.430 and other sections of the Constitution and statutes.

Several observations may be made about this enactment:

1. It is, according to its title, an Act, not a resolution, and it was enacted as legislation of the General Assembly.

2. The title relates to a bonus for *veterans,* and does not expressly include widows, heirs, or next of kin.

3. The body of the Act shows that it was designed to create an indebtedness exceeding the limitation ($500,000) fixed by section 49 of the Constitution.

4. Since the amount of indebtedness is not fixed in dollars, it is fixed at that amount sufficient to pay a cash bonus to veterans (and others) *not to exceed* $500 and $300 for (military) service.

5. The Act provides that the bonds issued creating this indebtedness shall be paid by a tax upon retail sales.

6. Section 2 of the Act specifies the form of the question to be submitted to the voters. (It likewise refers only to *veterans.*)

7. Section 3 provides that the "amendment" shall be submitted to the voters as provided in KRS 118.430.

## V

### Invalidity Of Act As A Constitutional Amendment

The legislature proposed this measure as a constitutional amendment. Outside of

the label, it is not such a contrivance. There is nothing in the Act which even suggests a change in our organic law. It grants no new or additional power to the legislature or to anyone else. It amends no section of the Constitution. It creates no rights under the Constitution. In substance it does no more than authorize the legislature for a specified purpose to exceed the debt limit fixed at $500,000 by section 49 of the Constitution. As we shall see, a constitutional amendment is neither necessary nor proper to accomplish this result.

■ There are sound reasons why this Act is not, and does not propose, a proper constitutional amendment. As an original proposition, it would seem that a constitutional amendment must do something, constitution-wise. In Wilson v. Crews, 160 Fla. 169, 34 So.2d 114, 117, it was said an amendment "repeals or changes some provisions in, or adds something to, the instrument amended".

As stated in State ex rel. Halliburton v. Roach, 230 Mo. 408, 130 S.W. 689, 694:

"The purpose of constitutional provisions and amendments to the Constitution is to prescribe the permanent framework and a uniform system of government, and to assign to the different departments thereof their respective powers and duties."

That case involved an attempt to compel the Secretary of State to file certain petitions submitting a constitutional amendment to a vote of the people. In Missouri this may be done by an initiative process instituted by citizens and legal voters. It was held that the Secretary of State was not required to file a petition for a proposed constitutional amendment if the proposal was not in fact a constitutional matter. The opinion points out that labelling a document a constitutional amendment did not make it one; that the nature and character of the proposal was controlling; and that a proposal which is in effect a legislative enactment is not a proper constitutional amendment. That case is direct authority on our question, the only difference in the situation there presented and the one here being the manner of proposing a constitutional amendment. The following quotations from this case are significant:

"While these petitions are named and called a 'proposed amendment to the Constitution of Missouri,' yet we take it that the allegations of the petitions and what is shown upon the face of them must finally determine their nature and character; that is, whether or not it is in fact an amendment to the Constitution or is it purely a legislative act." 130 S.W. 693.

"Obviously in determining the nature and character of the measure proposed in the petitions presented to the respondent we must look to the subject-matter with which they deal. The mere calling it an amendment to the Constitution unless the subject-matter verifies the correctness of that name is not binding either upon the respondent or upon this court. * * * Whichever course is pursued in submitting the amendment, it must in fact be an amendment to the Constitution." 130 S.W. 695.

"The initiative and referendum amendment to the Constitution speaks of laws and amendments to the Constitution. Manifestly those terms are used in their plain and ordinary sense, and in our opinion the petitions have no right to undertake to put in the Constitution, which is regarded as the organic and permanent law of the state, mere legislative acts providing for the exercise of certain powers." 130 S.W. 696.

■■ We believe this authority sound. It seems reasonable and logical that as guardians of our organic law, the courts have the duty and the power to prevent the encumbrance of our Constitution by legislative matters which in no way affect, alter

or add to the Constitution. In other words, there is neither necessity nor reason to add to our fundamental document provisions which in a constitutional sense are without any meaning whatsoever.

█ A second objection to the validity of this Act as a constitutional amendment is that it was not presented to the people in the form of a question devised by the Attorney General, as mandatorily required by KRS 118.430(2). This section was enacted pursuant to the authority given the General Assembly by section 256 of the Constitution to provide by law the manner in which the vote shall be taken on an amendment. Obviously this means a general law. In effect this statute is an integral part of the procedure implementing section 256.

As a matter of fact, the legislature in section 3 of the Act under consideration specifically provided that the "amendment" shall be submitted to the voters in the manner provided under KRS 118.430. The proposal was not so submitted, and that ends the matter. In view of the very serious question presented in this case as to whether or not the question drafted by the legislature in section 2 of the Act adequately stated the substance of it (particularly with respect to widows, heirs, and next of kin), the obvious necessity of having the Attorney General frame the question, after careful examination of the Act, is apparent. We can almost take judicial notice that the Attorney General, the state's highest legal officer, would not in framing the question have omitted "widows, heirs, and next of kin".

█ The contention may be made that the legislature by framing the question in the Act intended to amend KRS 118.430(2), to the extent of doing away with the requirement that the Attorney General perform this function. There is an insurmountable difficulty here. The title to the Act does not refer to KRS 118.430, nor does the body of the Act propose such amendment. It was specifically held on this very question under similar circumstances in Hatcher v. Meredith, 295 Ky. 194, 173 S.W.2d 665, that if the legislature undertakes to frame the question, thereby ignoring the machinery set up in KRS 118.430, such a provision is void. Therefore, no proper question was submitted to the voters for a constitutional amendment. Strict compliance with constitutional provisions pertaining to amendments is required. 11 Am.Jur., Const.Law, Sect. 28 (page 632).

In this connection another serious objection to this Act as a constitutional amendment is that its provisions concerning a retail sales tax on "all" sales (with exceptions not important here) might well constitute an amendment to section 230 of the Constitution (devoting motor fuel taxes exclusively to public highway purposes), when there is no mention in the title, the body of the Act, or the question submitted of a proposed amendment to this section.

For the reasons stated above, it is our considered opinion that this Act, though ostensibly proposing a constitutional amendment, did not either in fact or in law, from the standpoint of substance, possess such character. Even the vote of the people cannot give it that dignity.

## VI

### Validity Of The Act As A Legislative Enactment Under Section 50 Of The Constitution

Though we have determined that the Act could not be validly adopted as a constitutional amendment, it may be given full force and effect as a proper legislative enactment under section 50 of the Constitution. That section, so far as pertinent here, provides:

"No act of the General Assembly shall authorize any debt to be contracted on behalf of the Commonwealth except for the purposes mentioned in section 49, unless provision be made therein to levy and collect an annual tax sufficient to pay the interest

stipulated, and to discharge the debt within thirty years; nor shall such act take effect until it shall have been submitted to the people at a general election, and shall have received a majority of all the votes cast for and against it. * * *."

At the outset it may be observed that the legislature, even if by inadvertence, enacted what was in form an almost ideal Act to submit a question to the voters under this section. The measure is titled "An Act"; the question is framed by the legislature; and the method of submitting the question to a vote is prescribed.

A careful examination of the substance of this Act shows that it proposed the *creation of an indebtedness and a method of financing a veterans' bonus*. Clearly it is anticipated that to finance such a bonus the debt limitation of section 49 of the Constitution will be exceeded. This is evident from the fact that the legislature stated in section 1 of the Act "notwithstanding the limitation of indebtedness in section 49 or any other section of the Constitution of Kentucky."

There seems to be no question of the power of the legislature to issue bonds to pay an indebtedness of the Commonwealth (provided it does not violate an authorized indebtedness limit). We have heretofore decided, under heading II of this opinion, that the legislature may properly authorize the payment of a veterans' bonus. No one suggests the legislature lacks power to enact a sales tax. Under our present Constitution then, the only authority the legislature lacked to carry out the purposes of the Act was the right to incur an indebtedness in excess of the $500,000 limit prescribed by section 49 of the Constitution.

When the legislature is confronted with that difficulty, section 50 of the Constitution offers the simple solution. Obviously no constitutional amendment is necessary to authorize the legislature to do exactly what section 50 authorized it to do. This was recognized in Allen v. Cromwell, 203 Ky. 836, 263 S.W. 356.

A question presented in that case, which involved the "Seventy-five Million Dollar Bond Bill", was whether or not the title to the Act was defective under section 51 of the Constitution because it did not specify the several purposes, set forth in the Act, for which this money was to be used. It was held that since the only power the legislature lacked to carry out the purposes of the bill was the power to increase the State indebtedness by the issuance of bonds, and since that was the only reason it must go to the people, the subject of the Act, insofar as the voters were concerned, was a single one, which was the issuance of the bonds in the amount specified. In substance the holding was that in proceeding under section 50 the major, and practically sole objective, is to present to the people the question of whether or not they are willing to let the legislature incur an indebtedness in excess of that prescribed by section 49 for certain general purposes.

That case also recognized the Act need not be complete concerning the specific action to be taken by the legislature either in levying the tax to pay off the bonds or expending the money for which the people authorized the indebtedness. This principle was likewise recognized in Dalton v. State Property and Buildings Commission, Ky., 304 S.W.2d 342.

Our question finally resolves itself into whether or not this Act substantially complies with section 50 of the Constitution *as a legislative enactment* properly proposing to the people an increase in the state indebtedness to pay a veterans' bonus which will be financed by the issuance of bonds to be paid by receipts from a retail sales tax. Substantial compliance is all that is required. Dalton v. State Property and Buildings Commission, Ky., 304 S.W.2d 342. In our opinion it is a valid enactment.

We have considered possible objections to this Act as an enactment under section

50, but none are sufficiently meritorious to invalidate it. The first is that the Act does not fix a maximum amount in dollars as is usually done in such proposals. That would not seem to be required by section 50. Since a specific purpose for the indebtedness is set forth in the Act, and since the maximum payable to veterans is fixed in dollars in the Act, the amount involved is capable of reasonable approximation. In addition, it would not seem reasonable to say that the people could not approve an obligation for a specific purpose which by. its very nature cannot be stated in an exact figure.

Because of the fact that no aggregate amount is fixed in the Act, we believe the purpose of the indebtedness assumes particular importance. Specifying the purpose is the only way the people are given notice of what tax obligations they may incur by authorizing the legislature to exceed the debt limitation of section 49. This brings us to the most serious attack made upon this Act *as a constitutional amendment*, and the problem is likewise involved when we consider this Act as *an enactment under section 50*. The question is whether or not the people, in authorizing an increased indebtedness to pay a bonus to "veterans", were authorizing such indebtedness also to pay widows, heirs and next of kin who are referred to in the body of the Act.

The title to the Act provides for a bonus to "veterans". The question framed by the legislature and submitted to the people refers to "a bonus to veterans". The legislative history shows that "their widows or heirs, or next of kin" were added to the Act by way of amendment. It is evident that the legislature did not contemplate that the word "veterans" included all of those in the classification added by amendment. Our view is the same.

It is apparent that if widows, heirs, and next of kin are to be equally compensated along with living veterans, the indebtedness incurred will be a great deal larger than if compensation is limited to veterans. Bear-

ing in mind the fact that the only way the people could estimate the cost of this program was by an understanding of its purpose as presented in the question for a vote, it seems to us that the word "veterans" must be limited to those who may reasonably fall within that classification, and we cannot presume the people voted to increase the indebtedness to compensate all of those other classes specified in the Act

We do not undertake to say who may properly and reasonably be classified, by the legislature, within the meaning of the word "veterans". It is possible that immediate dependents of deceased veterans, in the judgment of that body, might be brought within this category. We do not decide this .question. What we determine is : to the extent the additional classes specified in the Act are beyond the scope of "veterans", the people will not be deemed to have given their approval, and so much of the Act in this respect as goes beyond the question submitted should be considered surplusage.

The next objection may be that a sales tax is not "an annual tax" prescribed in section 50. This question was settled in Dalton v. State Property and Buildings Commission, Ky., 304 S.W.2d 342.

Another objection may be, as we discussed under heading V, that the provision with respect to the type of sales tax provided in the Act may run counter to section 230 of the Constitution insofar as it relates to taxes on motor fuels. We have heretofore noted that it is doubtful if this Act as a constitutional amendment could properly amend section 230. The objection is not a valid one to the Act as a legislative enactment. Obviously it does not purport to, and could not amend section 230. If any of its provisions violate that section, they would be unconstitutional and cannot be given effect. We do not think this possibly defective portion is of such significance or is so integrated with the principle objective of the Act as to invalidate any other parts of it.

Another objection is that the Act provides for the retirement of the bonds in "not less than" 30 years, whereas section 50 says "within" 30 years.

In our opinion this ancillary provision violates section 50, and therefore cannot be given effect. Since it was not of substantial materiality on the question of exceeding the debt limitation, this invalid provision cannot be held to nullify the enactment or the vote of the people.

It may be contended, as we have discussed under heading V, that the legislature framed the question to be submitted to the voters instead of having it done by the Attorney General as provided in KRS 118.430. The objection raised to the constitutional amendment does not apply to this Act as a legislative enactment. It is proper for the legislature to frame the question in an Act passed under section 50 of the Constitution. Dalton v. State Property and Buildings Commission, Ky., 304 S.W.2d 342. The reference in the Act to KRS 118.430 must clearly be construed to mean that its provisions should apply, except with respect to framing the question. This is *not* an attempt to amend KRS 118.430, which we said would be necessary if a constitutional amendment was involved.

Finally, the objection has been raised that this legislative enactment was not submitted to the Governor for approval, as required by sections 56, 88 and 89 of the Constitution. Whether any of these sections apply to an "act" under section 50 of the Constitution is unnecessary for us to decide in this litigation. Failure to have the enactment approved by the Governor, if such was required, would constitute at most a procedural defect not affecting the presentation of a proper question to the electorate. Such deficiency, if it existed, was cured by the vote of the people, which is paramount to and supersedes any approval by the executive branch. See State ex rel. Landis v. Thompson, 120 Fla. 860, 163 So. 270. Under Section 50 it is the vote of the people which gives substance and "effect" to the proposal, and that vote constitutes a superseding authority which may not be attacked thereafter on this ground.

## VII

### Conclusion

Many practical and legal problems have been presented in this controversy. We have not undertaken to determine questions which may arise when specific legislation is enacted pursuant to the authorization granted by a vote of the people. Many matters of constitutional law are not clear cut, but we must bear in mind that this instrument is a living organ. It is not for the courts to be hypertechnical in seeking reasons to defeat the will of the legislature and the people when they have had a fair opportunity to express themselves under the procedures recognized by the Constitution. While we have determined that what the people voted on was not a constitutional amendment, their wishes may be recognized by upholding the validity of this legislation to the extent set forth in this opinion.

The Act in question was properly passed, a proper question was submitted to the people, and the vote of this election should be certified by the appellants.

The judgment is reversed, with directions to enter a judgment declaring the rights of the parties consistent with this opinion and denying the injunction sought by the plaintiff.