RENDERED: JUNE 13, 2019
TO BE PUBLISHED

# Supreme Court of Kentucky FINAL

## 2018-SC-000583-TG
## (2018-CA-001510)

### DATE 10/31/19 JW

WHITNEY WESTERFIELD, IN HIS OFFICIAL                    APPELLANTS
CAPACITY AS SENATOR; WHITNEY
WESTERFIELD; JOSEPH FISCHER IN HIS
OFFICIAL CAPACITY AS
REPRESENTATIVE; JOSEPH FISCHER;
MARSY'S LAW FOR KENTUCKY, LLC; AND
MARSY'S LAW FOR KENTUCKY, A
POLITICAL ISSUES COMMITTEE


                    ON TRANSFER FROM COURT OF APPEALS
                           NO. 2018-CA-001510
V.                  FRANKLIN CIRCUIT COURT NO. 18-CI-00794
                        HONORABLE THOMAS D. WINGATE


DAVID M. WARD; KENTUCKY                                   APPELLEES
ASSOCIATION OF CRIMINAL DEFENSE
LAWYERS, INC.; ALLISON LUNDERGAN
GRIMES, IN HER OFFICIAL CAPACITY AS
SECRETARY OF STATE; AND THE
KENTUCKY STATE BOARD OF ELECTIONS,
EX REL, ALLISON LUNDERGAN GRIMES,
IN HER OFFICIAL CAPACITY AS CHAIRMAN
AND CHIEF ELECTION OFFICIAL FOR THE
COMMONWEALTH


AND

DAVID M. WARD AND KENTUCKY                     APPELLANTS
ASSOCIATION OF CRIMINAL DEFENSE
LAWYERS, INC.

                    ON TRANSFER FROM COURT OF APPEALS
                           NO. 2018-CA-001552
V.                FRANKLIN CIRCUIT COURT NO. 18-CI-00794
                     HONORABLE THOMAS D. WINGATE


WHITNEY WESTERFIELD, IN HIS OFFICIAL                     APPELLEES
CAPACITY AS SENATOR; WHITNEY
WESTERFIELD; JOSEPH FISCHER IN HIS
OFFICIAL CAPACITY AS
REPRESENTATIVE; JOSEPH M. FISCHER;
MARSY'S LAW FOR KENTUCKY, LLC;
MARSY'S LAW FOR KENTUCKY, A
POLITICAL ISSUES COMMITTEE; ALLISON
LUNDERGAN GRIMES, IN HER OFFICIAL
CAPACITY AS SECRETARY OF STATE; AND
THE KENTUCKY STATE BOARD OF
ELECTIONS, EX REL, ALLISON
LUNDERGAN GRIMES, IN HER OFFICIAL
CAPACITY AS CHAIRMAN AND CHIEF
ELECTION OFFICIAL FOR THE
COMMONWEALTH


**OPINION OF THE COURT BY CHIEF JUSTICE MINTON**

**<u>AFFIRMING</u>**

We accepted transfer of this appeal from the judgment of the Franklin

Circuit Court that invalidated the submission of a proposed constitutional

amendment to the voters of Kentucky in a single-sentence ballot question. We

hold that the issue of whether the proposed amendment was properly

submitted to and adopted by the voters is justiciable. We further hold that

Sections 256 and 257 of the Kentucky Constitution require the entirety of a

proposed constitutional amendment to be published and submitted to the voters irrespective of statutory requirements prescribed by the legislature. The proposed amendment as submitted to the voters in the form of the present ballot question is invalid. Accordingly, we affirm the judgment of the Franklin Circuit Court.

## I.    FACTS AND BACKGROUND.

Under Sections 256 and 257 of the Kentucky Constitution, the General Assembly has the authority to propose a constitutional amendment to be published and submitted to the people for ratification. Section 256 governs the process for submitting a proposed amendment to the electorate and provides, in pertinent part:

> Amendments to this Constitution may be proposed in either House of the General Assembly at a regular session, and if such amendment or amendments shall be agreed to by three-fifths of all the members elected to each House, such proposed amendment or amendments, with the yeas and nays of the members of each House taken thereon, shall be entered in full in their respective journals. *Then such proposed amendment or amendments shall be submitted to the voters of the State for their ratification or rejection at the next general election for members of the House of Representatives, the vote to be taken thereon in such manner as the General Assembly may provide,* and to be certified by the officers of election to the Secretary of State in such manner as shall be provided by law, which vote shall be compared and certified by the same board authorized by law to compare the polls and give certificates of election to officers for the State at large.[1]

Section 257 governs publication of the amendment to the electorate. That section provides, in full:

> Before an amendment shall be submitted to a vote, the Secretary of State shall cause such proposed amendment, and the time that the same is to be voted upon, to be published at least ninety days

---

[1] Ky. Const. § 256 (emphasis added).

3

before the vote is to be taken thereon in such manner as may be prescribed by law.[2]

The General Assembly enacted Kentucky Revised Statute (KRS) 118.415 ostensibly to implement Sections 256 and 257. That statute provides generally that the amendment to be published and submitted to the electorate may be in the form of a ballot question. It also provides the process by which the ballot question must be published and submitted to the electorate. The statute states, in pertinent part, the following:

> (1) The General Assembly may state the substance of the amendment proposed to the Constitution of Kentucky in the form of a question in a manner calculated to inform the electorate of the substance of the amendment. When an amendment to the Constitution has been proposed by the General Assembly, the Secretary of State shall cause the question calculated to inform the electorate of the substance of the amendment which is prepared by the General Assembly or the Attorney General to be published at least one (1) time in a newspaper of general circulation published in this state, and shall also cause to be published at the same time and in the same manner the fact that the amendment will be submitted to the voters for their acceptance or rejection at the next regular election at which members of the General Assembly are to be voted for. The publication shall be made not later than the first Tuesday in August preceding the election at which the amendment is to be voted on.[3]

On January 2, 2018, Senator Whitney Westerfield introduced Senate Bill 3 ("SB 3"), entitled "AN ACT proposing to create a new section of the constitution of Kentucky relating to crime victim's rights." SB 3, colloquially known as "Marsy's Law," proposed an amendment to the Kentucky Constitution that would provide certain rights to crime victims. Section 1 of SB 3, which contains the text of the proposed amendment, provides the following:

---

[2] Ky. Const. § 257.

[3] KRS 118.415.

SECTION 1. IT IS PROPOSED THAT A NEW SECTION BE ADDED TO THE CONSTITUTION OF KENTUCKY TO READ AS FOLLOWS:

To secure for victims of criminal acts or public offenses justice and due process and to ensure crime victims a meaningful role throughout the criminal and juvenile justice systems, a victim, as defined by law which takes effect upon the enactment of this section and which may be expanded by the General Assembly, shall have the following rights, which shall be respected and protected by law in a manner no less vigorous than the protections afforded to the accused in the criminal and juvenile justice systems: victims shall have the reasonable right, upon request, to timely notice of all proceedings and to be heard in any proceeding involving a release, plea, sentencing, or other matter involving the right of a victim other than grand jury proceedings; the right to be present at the trial and all other proceedings, other than grand jury proceedings, on the same basis as the accused; the right to proceedings free from unreasonable delay; the right to consult with the attorney for the Commonwealth or the attorney's designee; the right to reasonable protection from the accused and those acting on behalf of the accused throughout the criminal and juvenile justice process; the right to timely notice, upon request, of release or escape of the accused; the right to have the safety of the victim and the victim's family considered in setting bail, determining whether to release the defendant, and setting conditions of release after arrest and conviction; the right to full restitution to be paid by the convicted or adjudicated party in a manner to be determined by the court, except that in the case of a juvenile offender the court shall determine the amount and manner of paying the restitution taking into consideration the best interests of the juvenile offender and the victim; the right to fairness and due consideration of the crime victim's safety, dignity, and privacy; and the right to be informed of these enumerated rights, and shall have standing to assert these rights. The victim, the victim's attorney or other lawful representative, or the attorney for the Commonwealth upon request of the victim may seek enforcement of the rights enumerated in this section and any other right afforded to the victim by law in any trial or appellate court with jurisdiction over the case. The court shall act promptly on such a request and afford a remedy for the violation of any right. Nothing in this section shall afford the victim party status, or be construed as altering the presumption of innocence in the criminal justice system. The accused shall not have standing to assert the rights of a victim. Nothing in this section shall be construed to alter the powers, duties, and responsibilities of the prosecuting attorney. Nothing in this section or any law enacted under this section creates a cause of action for compensation, attorney's fees, or damages against the Commonwealth, a county, city, municipal

5

corporation, or other political subdivision of the Commonwealth, an officer, employee, or agent of the Commonwealth, a county, city, municipal corporation, or any political subdivision of the Commonwealth, or an officer or employee of the court. Nothing in this section or any law enacted under this section shall be construed as creating:

(1) A basis for vacating a conviction; or
(2) A ground for any relief requested by the defendant.[4]

The General Assembly, under KRS 118.415, prepared a ballot

question to be published and submitted to the voters for their

ratification. That question is included in Section 2 of SB 3 and states the

following:

Are you in favor of providing constitutional rights to victims of crime, including the right to be treated fairly, with dignity and respect, and the right to be informed and to have a voice in the judicial process?[5]

SB 3 passed the Kentucky House and Kentucky Senate on January 24,

2019 and was enrolled on January 25, 2018. That same day, SB 3 was

delivered to the Secretary of State, Alison Lundergan Grimes ("Secretary

Grimes") to be published and submitted to the electorate at the November 6,

2018 election. On July 22, 2018, Secretary Grimes published the proposed

question in the Louisville *Courier-Journal* and the *Lexington Herald-Leader*. On

August 27, 2018, Secretary Grimes certified the question to the county clerks

for placement on the November 6, 2018 ballot.

On August 7, 2018, Appellees, David M. Ward and Kentucky Association

of Criminal Defense Lawyers, Inc. (together, "KACDL") filed a declaratory

---

[4] 2018 Ky. Acts, Ch. 1 (S.B. 3 § 1).

[5] 2018 Ky. Acts, Ch. 1 (S.B. 3 § 2).

judgment action in Franklin Circuit Court against Secretary Grimes in her official capacity and the State Board of Elections, seeking a declaration that the ballot question in SB 3 failed to inform the voters adequately of the substance of the amendment in violation of Kentucky's statutory and constitutional requirements. The action also sought, in the alternative, injunctive relief that would prevent Secretary Grimes from certifying the ballot question to the county clerks or would direct her to rescind her certification if made.

On August 20, 2018, the Appellants, Senator Whitney Westerfield and Marsy's Law for Kentucky, LLC, (together, "Westerfield") filed an Intervening Answer.[6] KACDL filed a motion for summary judgment, Westerfield filed a cross-motion for summary judgment, and arguments were heard on October 9, 2018.

On October 15, 2018, the Franklin Circuit Court ruled that the ballot question did not adequately state the substance of the amendment and thereby violated the requirement in KRS 118.415 that the question be "in a manner calculated to inform the electorate of the substance of the amendment." Accordingly, the circuit court allowed the question to appear on the ballot at the November 6, 2018 election, but enjoined Secretary Grimes from certifying the ballots cast for or against the proposed amendment. On the same day as the circuit court's ruling, Westerfield filed a Notice of Appeal, and KACDL filed a Notice of Cross Appeal, to the Court of Appeals. And this Court accepted transfer of that appeal from the Court of Appeals.

---

[6] Representative Joseph Fischer was later permitted to intervene as a party Defendant and is now an Appellant in this appeal.

The proposed amendment was approved by the voters at the November election with 63 percent of the vote.[7]

## II. ANALYSIS.

### 1. This Court has the authority to hear a constitutional challenge to a proposed constitutional amendment after it has been adopted by the voters.

Before addressing the merits of Westerfield's statutory and constitutional claims, we consider whether we have the authority to do so. Relying on the doctrine of separation of powers, Westerfield argues that the issue of whether the amendment was properly adopted—under either statutory or constitutionally mandated procedures—is a nonjusticiable political question because the ballot referendum has been conducted and the people have voted to adopt the amendment. In Westerfield's view, to assume jurisdiction to declare void a constitutional amendment adopted by the people would be an invasion of the legislative function of the people and would violate the "unusually forceful" separation of powers doctrine embedded in Kentucky's Constitution. Having rejected such an argument with respect to alleged constitutional violations on at least two occasions, we again find this issue to be justiciable.

Although we recognize that Kentucky's Constitution contains a uniquely stringent separation of powers provision,[8] we note that the doctrine does not

---

[7] The amendment was approved by the voters 62.81 percent to 37.19 percent. 868,932 voters voted for the amendment and 514,440 voted against it.

[8] *See Legislative Research Comm'n v. Brown*, 664 S.W.2d 907, 912 (Ky. 1984) ("Unlike the federal constitution, the framers of Kentucky's constitution included an express separation of powers."); *Sibert v. Garrett*, 246 S.W. 455, 457 (Ky. 1922) ("Perhaps no state forming a part of the national government of the United States has a Constitution whose language more emphatically separates and perpetuates what

8

"destroy the power of the courts to pronounce an act unconstitutional when its enactment is either expressly or by necessary implication inhibited and subversive of the purposes and intention of the makers of the [Kentucky] constitution . . . ."[9] That sentiment is especially true when the act is an amendment to the Commonwealth's organic law and the challenge is based on a failure to comply with constitutional requirements for submission to the people.

In *Stovall v. Gartrell*, for example, this Court invalidated a legislatively proposed constitutional amendment that had been voted on and adopted by the people.[10] In rejecting the argument that "a court may not inquire into the manner in which a proposed amendment was passed in the legislature, since it was done within the constitutional framework and the people have finally voted on the question[,]" we explained the following:

> The Act proposed a constitutional amendment. It could be adopted as such only if the constitutional requirements with respect to adoption were strictly followed (which includes the statutory procedures authorized by and implementing the Constitution). . . . [N]either the legislature nor the people, or both, can short-circuit the Constitution. When the question is raised in the proper manner and at the proper time, as here, the validity [of] a proposed change in the Constitution is a judicial question.[11]

In *McCreary v. Speer*, this Court invalidated a proposed constitutional amendment after a vote was taken and the election had been certified claiming

---

might be termed the American tripod form of government than does our Constitution . . . .").

[9] *Sibert*, 246 S.W. at 458.

[10] 332 S.W.2d 256, 263 (Ky. 1960).

[11] *Id.* at 258 (citing *Miller v. Johnson*, 18 S.W. 522 (Ky. 1892); *McCreary v. Speer*, 162 S.W. 99 (Ky. 1914)) (other citations omitted).

the Secretary of State failed to comply with the requirement of Section 257 that the proposed amendment be published at least 90 days before the election.[12] Similarly, the Court determined that it had authority to hear the challenge despite a favorable vote at the general election:

> It is argued that this conclusion puts it in the power of an officer of the state to defeat the will of the people and prevent an amendment of the Constitution; but the Secretary of State is an officer created by the Constitution. The duty to publish the proposed amendment is a duty imposed by the Constitution, and, when the Constitution has provided that it may only be amended when certain things have been done by the agencies it selects for that purpose, to amend the Constitution in any other way is to ignore its provisions.
>
> The fact that a majority voted for the amendment, unless the vote was taken as provided by the Constitution, is not sufficient to make a change in that instrument. Whether a proposed amendment has been legally adopted is a judicial question, for the courts must uphold and enforce the Constitution as it is written until it is amended in the way which it provides for.[13]

Likewise, we find the constitutional challenges to the proposed amendment in this case to be justiciable, despite the voters having voted overwhelmingly in favor of the ballot question at the November 6, 2018 election. Like the challenges in both *Stovall* and *McCreary*, KACDL has challenged the proposed amendment in this case claiming it failed to comply with constitutional requirements with respect to the adoption of an amendment. And, like the mandatory constitutional prerequisite at issue in *McCreary*, we conclude below that Section 256 contains a similar constitutional requirement over which the General Assembly has

---

[12] 162 S.W. at 101, 104 (action brought by a taxpayer to restrain the Governor from proclaiming that the amendment had been adopted as provided in Section 256).

[13] *Id.* at 104.

10

no discretion.[14] It is precisely this type of challenge we have determined to be justiciable.

However, with respect to the legislature's compliance with KRS 118.415, the statute governing the process for submission and publication of constitutional amendments to the electorate, unlike the trial court, we are less sure of the justiciability of that issue. To the contrary, we have serious questions about our ability to invalidate a legislative act—in this case a constitutional amendment—based on a failure of the legislature to follow its own procedure, a procedure that it

[14] Furthermore, Westerfield cites several cases from other jurisdictions to support his contention that "once the voters expressed their will on the proposed amendment, questions about the sufficiency of the wording of the ballot question became political questions that are not justiciable." Aside from the fact that *McCreary* and *Stovall* are both controlling on this point, we find the cited cases distinguishable in that they involve hyper-technical procedural requirements unlike the constitutional requirements designed to ensure the voters are in control of the amendment-adoption process. *See Montanans for Equal Application of Initiative Laws v. State, ex rel. Johnson*, 154 P.3d 1202 (Mont. 2007) (refusing to hear a challenge to invalidate signatures on a petition for a ballot referendum because the referendum had already been passed at an election); *Brown v. Morris*, 290 S.W.2d 160 (Mo. 1956) (holding that the requirement that a bill "be signed by presiding officers of both houses," was not a "substantive and mandatory part of the legislative proceedings" and a failure to observe such a requirement was cured by the vote of the people); *Beebe v. Koontz*, 302 P.2d 486 (Nev. 1956) (refusing to hear a challenge to a ballot referendum that purported to be signed by "qualified electors" instead of "voters" as required by state constitution because suit had not been filed with enough time for orderly appellate review). In any case, we are not persuaded that KACDL could have filed their suit in time for fully-considered trial court and appellate review before the election.

Westerfield also cites to *Miller v. Johnson*, 18 S.W. 522 (Ky. 1892); *Gatewood v. Matthews*, 403 S.W.2d 716 (Ky. 1966); and *Gaines v. O'Connell*, 204 S.W.2d 425 (Ky. 1947), for further support that a favorable vote taken by the people renders constitutional challenges to a proposed amendment nonjusticiable. While those cases stand for the proposition that "[s]overeignty resides with [the people], and they are the supreme lawmaking power," this does not require this Court to refrain from judicial review of a constitutional amendment simply because the people have voted favorably at the ballot. *McCreary* and *Stovall* make clear that mandatory constitutional requirements pertaining to such amendments must be strictly followed—particularly those that are designed to ensure that the amendment-adoption process is truly in the hands of the people.

11

has full authority to change.[15] For this reason, and because we find that the submission of the amendment was constitutionally deficient, we decline to decide this issue.

In sum, though the proposed amendment received 63 percent of the vote at the November election, the question of whether the amendment was properly adopted in accordance with mandatory constitutional requirements is a judicial one.[16] Accordingly, we proceed to the merits of KACDL's claim.

## 2. The relief KACDL seeks is not barred by the doctrine of laches.

As a preliminary matter, Westerfield argues that the doctrine of laches bars the relief sought by KACDL because KACDL "failed to assert [their] rights within a reasonable period of time after the passage of SB 3, causing prejudice and disruption to the electoral process." Laches "in its general definition is laxness; an unreasonable delay in asserting a right.

---

[15] *See Bd of Trs. v. Att'y Gen.*, 132 S.W.3d 770, 776–78 (Ky. 2003) (questioning its ability to strike down a law based on the General Assembly's failure to comply with KRS 6.350, which requires a bill to receive an actuarial analysis in certain circumstances before leaving a legislative committee); *Baines v. New Hampshire Sen. Pres.*, 876 A.2d 768, 776 (N.H. 2005) ("[B]ecause these statutes concern nonconstitutionally mandated legislative procedures and because the State Constitution grants the legislature the authority to establish such procedures, the question of whether the legislature violated these statutes is nonjusticiable.")

[16] In addition to his political question argument, Westerfield argued to the circuit court that KACDL lacks standing to assert their claim. But it appears that Westerfield abandoned this argument on appeal to this Court because he did not make the argument in his brief or during oral arguments. In any event, Westerfield asserted that he, along with the other Appellants, had "standing as voters, and as amendment proponents, to oppose undoing the election." And we see no reason that the same argument would not apply with equal force to KACDL in this case.

12

In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party."[17]

Westerfield argues that the doctrine applies here because KACDL had knowledge of the version of the ballot question that would ultimately be published and submitted to the electorate when SB 3 was passed by the General Assembly and enrolled on January 25, 2018, but nevertheless delayed until August 7, 2018 to bring this suit. Westerfield alleges that such a delay resulted in a "prejudice and disruption to the electoral process" because KACDL did not file its suit in time for both the trial court and appellate courts to adjudicate the matter fully, resulting in the question being certified to the county clerks, placed on the ballot, and voted on, all while running the risk of being invalidated.

We are not persuaded that KACDL was negligent in the timing of this declaratory judgment action. Nevertheless, we fail to see how allowing the vote to proceed clouded by the possibility that the ballot measure might be nullified produces an inequitable result that justifies a court's exercise of its equitable powers to withhold relief that ought otherwise to be granted. More importantly, we decline to exercise our equitable powers when the harm of allowing an unconstitutionally adopted amendment to take effect outweighs the disruption caused by KACDL's purported remissness.

---

[17] *Denison v. McCann*, 197 S.W.2d 248, 249 (Ky. 1946).

13

## 3. The proposed amendment violates Section 256 of the Kentucky Constitution.

We turn now to the merits of KACDL's constitutional challenge. KACDL argues that the proposed amendment is invalid because it failed to satisfy the requirement that it be published and submitted to the electorate.[18]

To reiterate, Section 256 allows the General Assembly to propose an amendment to the Kentucky Constitution and requires that it be submitted to the electorate for a vote. That section provides, in pertinent part, the following:

> Amendments to this constitution may be proposed in either House of the General Assembly at a regular session, and if such amendment or amendments shall be agreed to by three-fifths of all the members elected to each House, such proposed amendment or amendments, with the yeas and nays of the members of each house taken thereon, shall be entered in full in their respective journals. Then *such proposed amendment or amendments shall be submitted to the voters of the State for their ratification or rejection at the next general election for members of the House of Representatives, the vote to be taken thereon in such manner as the General Assembly may provide* . . . .[19]

When interpreting constitutional provisions, we look first and foremost to the express language of the provision, "and words must be given their plain and usual meaning."[20] This Court must not construe such plain and definite

---

[18] We note that KACDL did not argue in its brief to this Court that Section 256 itself, irrespective of KRS 118.415, was violated. But KACDL did present this argument to the Franklin Circuit Court and indicated that it was still its position during oral arguments before this Court. This Court has recognized that an appellate court can affirm a trial court's ruling for any reason appearing in the record. *See Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 495–97 (Ky. 2014) (quoting *Fischer v. Fischer*, 348 S.W.3d 582, 589–90 (Ky. 2011)) ("In instances where a trial court is correct in its ruling, an appellate court, which has de novo review on questions of law, can affirm, even though it may cite other legal reasons than those stated by the trial court.").

[19] Ky. Const. § 257 (emphasis added).

[20] *Fletcher v. Graham*, 192 S.W.3d 350, 357–58 (Ky. 2006) (citing *City of Louisville Mun. Hous. Comm'n v. Pub. Hous. Admin.*, 261 S.W.2d 286, 287 (Ky. 1953)).

language "in such a manner as to thwart the deliberate purpose and intent of the framers of that instrument."[21] Further, "[i]t is to be presumed that in framing the constitution great care was exercised in the language used to convey its meaning and as little as possible left to implication[.]"[22]

We have previously interpreted Section 256 as granting to the General Assembly the exclusive authority to determine the procedure by which a proposed amendment must be submitted to the electorate. Although not central to the holding of the case, we first expressed this view in *Funk v. Fielder*, where we explained that the phrase "'the vote to be taken thereon in such manner as the General Assembly may provide' left it open for the legislature to prescribe the manner, and, in so doing, it enacted KRS 118.430."[23]

Now, however, we are unable to square such a statement with the plain text of Section 256. The provision expressly provides that "such proposed amendment or amendments shall be submitted to the voters[.]"[24] This statement is separate and apart from the phrase "the vote to be taken thereon in such manner as the General Assembly may provide." A plain reading of this text suggests that the Framers intended to impose a mandatory requirement

---

[21] *Harrod v. Hatcher*, 137 S.W.2d 405, 408 (Ky. 1940).

[22] *City of Louisville v. German*, 150 S.W.2d 931, 935 (Ky. 1940).

[23] 243 S.W.2d 474, 476 (Ky. 1951). *See also Hatcher v. Meredith*, 173 S.W.2d 665, 670 (Ky. 1943). KRS 118.430 was later amended to become KRS 118.415. For our purposes, the two statutes are substantially the same. In *Stovall*, we again accepted this interpretation as valid, explaining that KRS 118.430, "was enacted pursuant to the authority given the General Assembly by section 256 of the Constitution to provide by law the manner in which the vote shall be taken on an amendment." 233 S.W.2d at 263.

[24] Ky. Const. § 256.

that *the amendment* be submitted to the voters, and that they intended to leave only the *way the vote was to be taken* to the General Assembly's discretion. To allow the phrase "in such manner as the General Assembly may provide" to modify both "the vote to be taken" and "shall be submitted to the voters," would go against ordinary rules of sentence structure.

We acknowledge that it is possible to interpret the phrase "the vote to be taken thereon" to encompass not only the logistical details of the voting process but also the form of the amendment to be submitted for a vote. But we find it unimaginable that the Framers intended to grant such broad authority over the process of modifying our organic document solely to the General Assembly. And a review of the Constitutional Debates shows the Framers' view that amending the Constitution should be more difficult than passing a statute and that it should be largely in the hands of the people.

For example, in rejecting the notion that allowing amendments to the Constitution would make the document nothing more than a statute to be changed by the legislature, Delegate Jonson[25] noted that Section 256 imposed both a heightened requirement for passage in the General Assembly and "then instead of its taking effect at the will of the Legislature *it must be remitted back to the people for whom this Constitution is being made, and for whom it will furnish the means of government.*"[26] Similarly, Delegate Lassing[27] expressed his view that the people's ratification of such an amendment was imperative:

---

[25] Jep. C. Jonson was the Delegate from McLean County. Ky. Const. Ordinance.

[26] 1890-91 Ky. Const. Debates 5246–47 (emphasis added).

[27] L. W. Lassing was the Delegate from Boone County. Ky. Const. Ordinance.

16

It does seem to me that the organic law of the state should not be easily changed. It does seem to me that ample opportunity should be given to the people of the State to take a sober second-thoughted deliberative consideration of the matter before anything [sic] is inserted in the organic law different from what it is now. . . . An organic law, as I conceive it, should not be as easily, or nearly as easily, changed as a statute.[28]

In addition to its being contrary to the plain language, an interpretation that would give to the legislature absolute authority to choose the way an amendment is even *submitted* to the electorate would seem to undermine the Framers' concerns entirely and would yield an absurd result. For example, were this the case, the General Assembly could have just as easily provided in KRS 118.415 that only a ten-word summary of an amendment may be submitted to the electorate for a vote. Such a procedure would surely be at odds with the Framers' idea that it should not be entrusted to the legislature alone to amend our organic document.

With the Framers' intentions in mind, we also find it impossible to read Section 256 as saying anything other than the proposed amendment itself must be placed on the ballot. The meaning of the phrase "such proposed amendment or amendments shall be submitted to the voters" is plain and its direction is clear: *the amendment* is to be presented to the people for a vote.

---

[28] 1890-91 Ky. Const. Debates 5252. The Framers appeared wary of giving to the General Assembly unilateral authority to amend the Constitution in part because of the notoriety that could come from such an amendment. Delegate Harvey Harold Smith, from Boone County, Ky. Const. Ordinance, stated the following: "[Y]ou cannot imagine the pride a legislator will take in getting through an amendment to the Constitution. As most men seek to immortalize themselves in some manner, so a legislator would seek reputation and fame in certain localities by this scheme." 1890-91 Ky. Const. Debates 5256.

Again, we acknowledge that it is possible to interpret the phrase "submit" as something other than presentation of the thing itself to the people. But such an interpretation would go against the word's ordinary meaning[29] and is contrary to the idea, repeated throughout the Constitutional Debates, that the modification of our organic document requires a meaningful, thoughtful opportunity for the voters to know what they are voting on—one that is separate and apart from the legislature's. We simply cannot read this section to allow anything less.[30]

---

[29] Merriam-Webster presently defines *submit* as "to present or propose to another for review, consideration, or decision." "Submit." Merriam-Webster Online Dictionary. 2019 https://www.merriam-webster.com/dictionary/submit (last visited May 13, 2019). A similar definition was in effect at the time Section 257 was drafted: "to leave or commit to the discretion or judgment of another or others; to refer[.]" "Submit." *Webster's Practical Dictionary, A Practical Dictionary of the English Language* 422 (1884).

[30] We are not alone in construing this language to require presentment of the full text of a legislatively proposed constitutional amendment to the people. In *Walmsley v. McCuen*, 885 S.W.2d 10, 12 (Ark. 1994), the Supreme Court of Arkansas interpreted similar language in their constitution with respect to the publication of proposed constitutional amendments—"*such proposed amendments shall be entered on the journals . . . and published in at least one newspaper in each county*, where a newspaper is published, for six months immediately preceding the next general election for Senators and Representatives, at which time the same shall be submitted to the electors of the State." The Court interpreted that language as requiring "publication of an entire proposed amendment in a newspaper in every county that has a newspaper." *Id.* at 273–74.

While some jurisdictions have reached the opposite conclusion with respect to the form of the amendment on the ballot, their constitutional provisions differ from ours in important ways. *See Stop Slots MD 2008 v. State Bd. of Elections*, 34 A.3d 1164, 1179 (Md. 2012) (Md. Const. art. XIV, § 1 states that amendments "shall be submitted, in a form to be prescribed by the General Assembly, to the qualified voters of the State for adoption or rejection"); *Young v. Bryne*, 364 A.2d 47 (N.J. 1976) (N.J. Const. Art. IX, ¶ 4 states that amendments shall "be submitted to the people at the next general election in the manner and form provided by the Legislature"); *State ex rel. Voters First v. Ohio Ballot Bd.*, 978 N.E.2d 119 (Ohio 2012) (Oh. Const. Art. XVI, § 1 states that "[t]he ballot need not contain the full text of the proposal").

We acknowledge however, that at least one jurisdiction with a constitutional provision like ours has determined that the full text of the amendment does not need to be submitted to the people for a vote. *See League of Women Voters Minnesota v. Ritchie*, 819 N.W.2d 636, 646–47 (Minn. 2012) (citing *Breza v. Kiffmeyer*, 723 N.W.2d

18

Accordingly, we hold that Section 256 imposes a mandatory constitutional directive on the General Assembly to submit the amendment, in its entirety, to the electorate for a vote, and leaves to the discretion of the General Assembly only the way the vote must be taken. Strict compliance with such textual directives pertaining to constitutional amendments is required.[31] Because the form of the proposed amendment submitted to the electorate at the ballot was something less than the full text, the amendment violates Section 256 and is void.

### 4. The proposed amendment violates Section 257 of the Kentucky Constitution.

Having determined that Section 256 requires the entirety of a proposed constitutional amendment to be submitted to the people for a vote, we turn

---

633, 636 (Minn. 2006)) (holding that constitutional provision requiring that proposed amendments must be "submitted to the people for their approval or rejection at a general election" left it to the legislature to determine the manner of submission and did not require the full text to appear on the ballot). However, we find more persuasive the dissenting Justices' view in that case that "the unambiguous text of [the constitutional provision] *does* prescribe the manner in which a proposed constitutional amendment is to be submitted to voters for approval: by placing the proposed amendment itself on the ballot." *Id.* at 655–56 (Page, J., dissenting, joined by Anderson, J.).

[31] *Stovall v. Gartrell*, 332 S.W.2d 256, 263 (Ky. 1960) (citation omitted). *See also Gatewood v. Matthews*, 403 S.W.2d 716, 718 (Ky. 1966) (noting that, with respect to challenges to constitutional amendments based on Sections 256 and 258, "this court has held that such efforts must follow precisely the procedure established in that particular section") (citing *Harrod v. Hatcher*, 137 S.W.2d 405 (1940); *Arnett v. Sullivan*, 132 S.W.2d 76 (1939); *McCreary v. Speer*, 162 S.W. 99 (1914)).

now to whether Section 257 also requires the entire amendment to be published.[32] We hold that it does.[33]

Again, Section 257 governs the publication of a proposed amendment before it is sent to the electorate for a vote. It provides the following:

> Before an amendment shall be submitted to a vote, the Secretary of State shall cause such proposed amendment, and the time that the same is to be voted upon, to be published at least ninety days before the vote is to be taken thereon in such manner as may be prescribed by law.

Bound by the same principles of construction, we find it impossible to construe this constitutional provision in a way that is different from Section 256. We note that both Section 256 and Section 257 require that *"such proposed amendment"* be submitted or published. And, like Section 256, the phrase "in such manner as may be prescribed by law" plainly modifies the word "published." Had the Framers intended for these provisions to be construed differently—i.e., for "such proposed amendment" to mean the entirety of the amendment in one provision but not the other—then it would almost certainly have used different language. But it did not, and, like Section

---

[32] We recognize that appellate courts "ordinarily will not consider issues where they are not essential to the disposition of the case." *Barth v. Reagan*, 564 N.E.2d 1196, 1205 (Ill. 1990). Nevertheless, we find it appropriate to consider this issue because it is inextricably linked to the interpretation of Section 256.

[33] Contrary to Westerfield's assertion, this issue was preserved for our review as KACDL argued this point during oral arguments to the Franklin Circuit Court and in its brief before this Court. Again, this Court has recognized that an appellate court can affirm a trial court's ruling for any reason appearing in the record. *See Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489, 495–97 (Ky. 2014) (quoting *Fischer v. Fischer*, 348 S.W.3d 582, 589–90 (Ky. 2011)) ("In instances where a trial court is correct in its ruling, an appellate court, which has de novo review on questions of law, can affirm, even though it may cite other legal reasons than those stated by the trial court.").

256, we think the directive in this provision is clear: The Secretary of State must cause *the amendment* to be published at least ninety days before it is submitted to the people for a vote, but the General Assembly has discretion over the way that publication may take place.[34]

Recognizing that the two provisions must be construed in the same way, it becomes even more clear that the intent of the Framers was not to give to the General Assembly absolute authority to determine the form of the amendment that must be published and submitted. Were that the case, it would be entirely possible for a proposed constitutional amendment to be put to a vote of the people without them ever having an opportunity to read the full text of it— either at the ballot box or in their local newspaper.[35] Given the Framers' desire to place in the hands of the people the authority to amend our organic document, they could not possibly have intended this result. Our constitution is too important and valuable to be amended without the full amendment ever being put to the public.

---

[34] The General Assembly has exercised this discretion by requiring publication to occur "one (1) time in a newspaper of general circulation published in this state." KRS 118.415(1).

[35] In fact, that is exactly what was done in this case. Only the 38-word ballot question drafted by the General Assembly, and not the 553-word amendment, was published and submitted to the electorate. We recognize that the substance of the proposed amendment received "saturation-level news media and social media coverage across Kentucky in the months preceding the election." While "widespread publicity in the press and public forums of the State" may constitute a "greater and better publication than has been or could be given in formal official notice," *Gaines v. O'Connell*, 204 S.W.2d 425, 428 (Ky. 1947), the fact that the purpose of Section 257 may inadvertently have been met does not absolve the Secretary of State of her duty to abide by a plain constitutional mandate to publish the entirety of the proposed amendment. Were we to adopt a rule that allowed robust public discourse to cure the Secretary of State's failure to abide by this constitutional mandate, we would have to assume that the public debate was based on an accurate understanding of what was contained in the amendment. Without publication of the entire amendment to the public, that assumption cannot be made.

Accordingly, we hold that Section 257 requires the Secretary of State to publish the entirety of the proposed amendment at least ninety days before the vote is to be taken thereon but leaves to the General Assembly the discretion to determine in what manner that publication may occur. Strict compliance with this constitutional procedural directive is required.[36] Because Secretary Grimes failed to cause the entirety of the proposed amendment to be published, the proposed amendment also violates Section 257 of the Kentucky Constitution and is void.

## III. CONCLUSION.

In sum, we hold that Section 256 of the Kentucky Constitution requires the General Assembly to submit the full text of a proposed constitutional amendment to the electorate for a vote. Likewise, Section 257 requires the Secretary of State to publish the full text of the proposed amendment at least ninety days before the vote. Because the form of the amendment that was published and submitted to the electorate for a vote in this case was not the full text, and was instead a question, the proposed amendment is void.

Therefore, we affirm the judgment of the Franklin Circuit Court.

All sitting. All concur.

---

[36] *See Stovall v. Gartrell*, 332 S.W.2d 256, 263 (Ky. 1960) (citation omitted). *See also Gatewood v. Matthews*, 403 S.W.2d 716, 718 (Ky. 1966) (noting that, with respect to challenges to constitutional amendments based on Sections 256 and 258, "this court has held that such efforts must follow precisely the procedure established in that particular section") (citing *Harrod v. Hatcher*, 137 S.W.2d 405 (1940); *Arnett v. Sullivan*, 132 S.W.2d 76 (1939); *McCreary v. Speer*, 162 S.W. 99 (1914)).

22

COUNSEL FOR APPELLANTS WHITNEY WESTERFIELD, WHITNEY WESTERFIELD, IN HIS OFFICIAL CAPACITY AS SENATOR AND JOSEPH FISCHER AND JOSEPH FISCHER IN HIS OFFICIAL CAPACITY AS REPRESENTATIVE:

David E. Fleenor
Office of the Senate President

COUNSEL FOR APPELLANTS MARSY'S LAW FOR KENTUCKY, LLC; AND MARSY'S LAW FOR KENTUCKY, A POLITICAL ISSUES COMMITTEE:

Sheryl G. Snyder
Jason Patrick Renzelmann
Samuel William Wardle
Frost Brown Todd, LLC

COUNSEL FOR APPELLEE DAVID M. WARD:

James David Niehaus

COUNSEL FOR APPELLEE KENTUCKY ASSOCIATION OF CRIMINAL DEFENSE LAWYERS, INC.:

Robert Kenyon Meyer
Dinsmore & Shohl, LLP

COUNSEL FOR APPELLEE ALLISON LUNDERGAN GRIMES, IN HER OFFICIAL CAPACITY AS SECRETARY OF STATE:

Katherine Lacy Crosby
Jonathan Todd Salomon
Tachau Meek, PLC

COUNSEL FOR APPELLEE THE KENTUCKY STATE BOARD OF ELECTIONS, EX REL, ALLISON LUNDERGAN GRIMES, IN HER OFFICIAL CAPACITY AS CHAIRMAN AND CHIEF ELECTION OFFICIAL FOR THE COMMONWEALTH:

Elizabeth Chesnut Barrera
Daniel Luke Morgan
McBrayer, McGinnis, Leslie & Kirkland, PLLC